No. 55,316

STATE OF KANSAS, *Petitioner*, v. B. L. PRINGLE, *Respondent*.

(667 P.2d 283)

Opinion filed July 5, 1983.

*Roger N. Walter,* disciplinary counsel, argued the cause and was on the brief for the petitioner.

*B. L. Pringle,* of Topeka, argued the cause and was on the briefs pro se for the respondent.

*Per Curiam:* This is an original proceeding in discipline. The complaint against B. L. Pringle arose out of the respondent's representation of Delbert Parker.

Delbert Parker, a resident of Greenleaf, Kansas, was engaged in the business of farming. He also operated a grain elevator and trucking business in partnership with his son. As a result of his business enterprises Parker incurred substantial indebtedness. Respondent had represented Delbert Parker and his family for about ten years, for the most part, defending Parker from claims of his creditors.

In addition to his other enterprises, Delbert Parker owned and farmed land in Canada. He was represented there by a Canadian solicitor, Edward A. Komarnicki. In the course of their relationship Parker entrusted certain funds to the Komarnicki Law Firm. A garnishment in the amount of $19,064.40 was filed against the firm by a creditor of Parker. Komarnicki contested the legal validity of the garnishment.

Respondent was the lawyer for Delbert and Evelyn Parker in the United States at the times pertinent to the allegations of the complaint. Respondent consented to an arrangement whereby he would hold the funds garnisheed pending a determination of legal validity of the garnishment. By letter dated September 17, 1980, the Komarnicki Law Firm sent respondent $19,064.40 in Canadian funds to be held in trust for the Parkers. The trust conditions under which the Komarnicki Law Firm remitted the funds to respondent were set forth in Komarnicki's letter as follows:

"It appears quite likely that the Garnishee will not hold. In the event it does not hold, there is a possibility of a second Garnishee. Accordingly I am relinquishing the amount over and above the $19,064.40 to Delbert and Evelyn Parker and at the same time sending to you the said $19,064.40 on the trust

condition that the same is to be released to Delbert and Evelyn Parker upon the Garnishee served upon me being unsuccessful and the appeal period expiring. I will be advising you when that takes place. In the event that the Garnishee should be valid, I would request the return of the said funds. It would be advisable that the same be invested in a term deposit or an interest bearing account. I am proceeding in this manner so that a second Garnishee cannot be served upon me."

The trust funds held by respondent for the Parkers were never invested in an interest bearing account. Respondent deposited the funds in the B. L. Pringle Special Account, Account No. 78-310-2, First National Bank of Topeka, Kansas, on October 1, 1980. The balance in the account prior to the deposit was $14,869.25. On October 17, 1980, the First National Bank debited respondent's special account for the difference in currency value between Canadian and United States funds in the amount of $2,764.33, leaving a balance of $16,300.07 held by respondent in trust for the Parkers. On October 17, 1980, after the Canadian discount debit, the balance in Account No. 78-310-2 was $11,537.67.

The balance in respondent's special account fell below the amount held in trust for the Parkers ($16,300.07) as of October 9, 1980. Thereafter the account never again reflected a balance sufficient to total the amount held in trust. The balances reflected on the monthly statements on Account No. 78-310-2 after the deposit of the Parkers' funds which were subpoenaed and admitted into evidence are as follows:

| | |
|---|---|
| October 15, 1980 | $14,906.50 |
| November 13, 1980 | $ 4,297.85 |
| December 12, 1980 | $ 979.85 |
| January 13, 1981 | $ 24.49 |
| February 12, 1981 | $ .70 - |
| March 12, 1981 | $ 81.35 - |
| April 14, 1981 | $ 12.92 |
| May 12, 1981 | $ 961.19 - |
| June 12, 1981 | $ 135.90 - |
| July 14, 1981 | $ 135.90 - |
| August 12, 1981 | $ 135.90 - |
| September 9, 1981 | $ .00 |
| November 13, 1981 | $ 12.21 |
| December 14, 1981 | $ 12.80 |
| January 13, 1982 | $ 5.82 |

After depositing the Parkers' funds in his special account, respondent withdrew those funds in a series of cash withdrawals over a period of about three months, keeping those funds in cash in his office in his desk drawer.

Respondent claims that Delbert Parker contacted the respondent to insure transfer of the funds from Komarnicki. Respondent explained to Mr. Parker that the funds would be subject to garnishment. If placed in respondent's client's account, they would be labeled as funds belonging to Mr. Parker and two banks having judgments against the Parkers could locate the funds. Mr. Parker then asked respondent to hold the funds. Late in September, 1980, after respondent received the check for the Parkers' funds, a second conference was held in respondent's office. Respondent explained to Delbert Parker that if the funds were placed in an interest-bearing account, the Parkers' name would have to appear on the account. Parker determined that since he had already been garnisheed in Canada, plus the numerous outstanding judgments against him in the United States, that the respondent should hold the funds in cash at the respondent's office. Parker denies that either conversation occurred.

The regular monthly statements of the First National Bank maintained on respondent's special account reflect only the net balance, and the amount of any deposit or debit. They do not reflect the source of any funds being held therein by the respondent. Specific transactions corresponding in total to a withdrawal of the amount held in trust for the Parkers ($16,300.07) and allegedly transferred to respondent's office in cash could not be identified from the bank records maintained on respondent's Special Account No. 78-310-2. Respondent did not produce any other records identifying or providing an accounting of the withdrawal of the Parkers' funds. Respondent claimed that his register showing specific withdrawals from his trust account had been lost when he moved his office.

Ultimately the Canadian garnishment was set aside. Komarnicki, by letter dated January 26, 1981, instructed respondent to release to the Parkers the funds remitted pursuant to the trust conditions set out in his previous letter. At the time respondent would have received this notice he had withdrawn virtually all the funds in his special account. January 29, 1981, respondent's special account showed a balance of $3.84.

Subsequent to Komarnicki's letter in January of 1981, respondent did not return all the funds held in trust. However, Delbert Parker did receive partial reimbursement of the funds in a piecemeal fashion. Respondent paid Parker in cash $1,000.00 on February 11, 1981; $2,500.00 by check number 828 drawn on his special account dated April 24, 1981; and $10,000.00 by check number 836 on his special account dated May 5, 1981. The $10,000.00 check was returned and not paid by the First National Bank for the reason of insufficient funds.

Delbert Parker testified that he requested return of the entire amount held in trust in a meeting with respondent on February 11, 1981. According to Parker, respondent said the money was invested and could not be obtained for sixty to ninety days. However, on that date Parker contends respondent gave him a personal check for $1,000.00. (Respondent's records indicate payment was in cash.)

Parker also testified that he again requested the return of the funds in a meeting with respondent on April 23, 1981. Parker required the money to plant a crop in Canada. According to Parker, respondent advised him he would have the funds the following morning. On April 24, 1981, respondent told Parker the funds were unavailable due to an error in processing the withdrawal. On that date, however, respondent gave Parker a $2,500.00 check drawn on his special account and promised another $10,000.00 would be sent to Parker in Canada within a short time.

Subsequently respondent sent Parker the $10,000.00 check drawn on his special account dated May 5, 1981. That check eventually was not honored because of insufficient funds. At the time he mailed that check, respondent also mailed Parker the following accounting:

### "ACCOUNTING FOR CLIENTS FUNDS

| | | |
|---|---|---:|
| "10-2-80 | Received Canadian check of Edward A. Komarnicki Law Firm | $19,064.40 |
| 10-21-80 | Bank takes Canadian discount | 2,764.33 |
| | | 16,300.07 |
| | Interest on $16,300.07 at 10 ¼% for 7 mo. | 974.61 |
| | | 17,274.67 |
| 2-11-81 | Returned to D. C. Parker | 1,000.00 |
| | | 16,274.67 |
| 4-24-81 | Returned to D. C. Parker | 2,500.00 |
| | | 13,774.67 |

| 5-5-81 | To Bob Sigler & T. A. Blaser at D. C. Parker's | | |
| | request | . | 800.00 |
| | | | 12,574.67 |
| 5-5-81 | Check to D. C. Parker | | 10,000.00 |
| | | | 2,574.67 |

Enclosed is a statement of charges and expenses advanced
to date on all other litigation *not* previously paid            5,815.21
I hope you will consider applying the balance to the fees
and costs set out above."

Respondent testified that he did not immediately return all of the Parkers' funds because Parker at periodic intervals only requested the return of portions of the funds. As to the $10,000.00 insufficient funds check, respondent contends that after he sent Parker the check, Parker countermanded his request for the money and asked respondent to retain the funds to negotiate the settlement of several judgments outstanding against him.

Notwithstanding the discrepancies in the testimony of respondent and Delbert Parker, the following facts are not contested. On April 25, 1981, there were insufficient funds in respondent's special account to cover the check number 828 ($2,500.00) drawn on that account on that same date, payable to Delbert Parker. Subsequent to writing that check but prior to its negotiation on April 27, 1981, respondent deposited sufficient funds to cover the check. Those deposits consisted of the following: (1) a check drawn on the State of Kansas, payable to Edward Curry, in the amount of $1,108.03, which was endorsed over to the respondent, less $62.50 taken in cash; and (2) a check made payable to cash in the amount of $1,560.00 drawn on respondent's account number 5132-2363 with Topeka Bank and Trust.

It is not contested that on May 5, 1981, there were insufficient funds in respondent's special account to pay check number 836 ($10,000.00) drawn on that account on that same date. Respondent sent that check to Delbert Parker and it was received by him on May 14, 1981. On May 15, 1981, Delbert Parker negotiated that check at his bank in Canada, received value, and wrote checks on the amount credited. Ultimately payment was refused by the First National Bank of Topeka because of insufficient funds in respondent's special account. The check was presented for payment a second time, and payment was again

refused because of insufficient funds. That check was never honored.

Respondent's special account did not have sufficient funds to pay the check number 836 at any time during the balance of calendar year 1981. Throughout calendar year 1981, respondent's special account was frequently overdrawn.

Although respondent admits that almost immediately after depositing the Parkers' funds in his special account on October 1, 1980, he began withdrawing those funds, and, notwithstanding his contention that he held those funds in cash with the Parkers' knowledge and consent, respondent's May 5, 1981, accounting to Parker shows a credit of $974.61 as interest on the full amount held in trust at 10 ¼% for seven months.

The Kormarnicki Law Firm subsequently demanded that respondent make good his check number 836 in the amount of $10,000.00 which had been returned for insufficient funds. Respondent failed to do so. Thereafter, on September 1, 1981, Edward Kormarnicki sent a letter of complaint to the disciplinary administrator.

Since respondent's check number 836 in the amount of $10,000.00 was not honored, respondent continued to be indebted to the Parkers for the remaining funds held in trust - $12,574.67 according to respondent's accounting.

After this complaint was registered with the disciplinary administrator by Edward Komarnicki in October of 1981, respondent closed the sale of certain property he owned to Gary Padgett, a banker in Greenleaf, Kansas, for a purchase price of $8,500.00. The property, located in Greenleaf, Kansas, had been conveyed to the respondent in April of 1979 by Delbert Parker in payment of legal fees. In order to close the sale, respondent was required to pay a judgment lien on the property in the amount of $4,040.21 which was attached as a result of Parker's prior ownership.

Subsequently, on November 10, 1981, respondent paid Delbert Parker $2,509.40 by cashier's check representing the balance of Parker's trust funds less certain deductions. At that time respondent also sent Parker a final accounting of the trust funds. That accounting shows a deduction for attorney fees ($5,815.21), a deduction for the amount respondent paid to release the judgment lien on the property he personally sold to Gary Padgett

($4,040.21), a deduction of one-half the costs involved in closing the sale of respondent's property to Padgett ($209.79), and payment to Parker of the amount remaining. These deductions were taken by the respondent after this complaint had been initiated. Parker eventually filed suit in the Shawnee County District Court. After certain setoffs, the court entered judgment against the respondent.

A hearing was conducted before a panel of attorneys. The panel recommended the respondent be indefinitely suspended from the practice of law. The respondent filed exceptions to the panel's decision. He attacks Parker's veracity and character and challenges the panel's finding. Witnesses testified before the panel that Delbert Parker's reputation for truth was not good. Respondent claims Parker requested him to hold Parker's funds in cash and Parker told the respondent he was not going to cash respondent's check for $10,000.00.

The findings of a panel should be accorded some weight, although the panel's report is advisory and not binding on the court. *State v. Freeman,* 229 Kan. 639, 644, 629 P.2d 716 (1981). In *State v. Zeigler,* 217 Kan. 748, 755, 538 P.2d 643 (1975), 93 A.L.R.3d 869, the court stated:

"The State Board of Law Examiners [now Kansas Board for Discipline of Attorneys] was created by rule of this court (K.S.A. 1974 Supp. 7-124, No. 202 [a]), as an adjunct of the court to have general supervision over the discipline of attorneys. The role of the Board is similar to that of a commissioner appointed by this court to conduct hearings and to make a report of his findings, conclusions, and recommendations. Although such a report is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony. (See 7 C.J.S. Attorney and Client § 37, p. 805.)"

The panel concluded that DR 9-102 (A) requires that funds of a client shall be deposited in one or more identifiable bank accounts. While respondent initially deposited the Parkers' funds in his special account, he withdrew the same by making several cash withdrawals over a period of time. The panel was persuaded that such conduct constitutes a violation of DR 9-102 (A) and that under the circumstances of this case, the Parkers' funds should not have been removed from respondent's special account.

DR 9-102 (A) provides:

"All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved." 230 Kan. cxxvii.

Respondent claims his client requested that he hold the funds in cash. The respondent's action is a clear violation of DR 9-102 (A). The motive beyond the withdrawals was to avoid a garnishment. Holding his clients' funds in cash would not prevent a garnishment of the funds, but would involve the respondent in a scheme to secrete Parker's funds from his creditors. Respondent first properly deposited his clients' funds in his trust account. According to the respondent, he then withdrew a portion of the funds and secreted them in his desk drawer.

DR 9-102 (B)(2) requires that a lawyer must, upon receipt of client's securities and properties, promptly identify and label the items and "place them in a safe deposit box or other place of safekeeping as soon as practicable." If respondent held the Parkers' funds in cash in his office under the circumstances described in this case, the panel believed that such conduct constituted a violation of DR 9-102 (B)(2). Furthermore, the panel believed that the proper place of safekeeping for cash is a bank rather than respondent's office.

DR 9-102 (B) provides in part:

"A lawyer shall:

"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

"(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable." 230 Kan. cxxvii.

Respondent again claims that he was following the specific request of his clients by holding the money in an office safe. An attorney cannot intentionally violate the disciplinary rules at the request of a client. The violation is incidental to the violation in DR 9-102 (A), the failure to keep the client's funds in the bank.

DR 9-102 (B)(3) requires that a lawyer maintain complete

records of all funds coming into his possession. Respondent maintained no records of withdrawals of the Parkers' funds from his special account and was unable to identify those withdrawals. Furthermore, no records were presented to the panel of cash funds allegedly held by respondent in his office. The panel concluded that respondent's failure to maintain records of his withdrawal of funds under the circumstances of this case constituted a violation of DR 9-102 (B)(3).

DR 9-102 (B)(3) requires an attorney to:

"Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them." 230 Kan. cxxvii.

The respondent claims his records were lost in a move. Respondent made no effort to obtain duplicate records from the bank to replace the missing records as required by DR 9-102 (B)(3). Respondent's failure to replace the lost bank records is a clear violation of the disciplinary rule.

Upon request of the client, a lawyer must promptly pay to the client funds in the lawyer's possession which the client is entitled to receive. While there is a conflict in the testimony, on balance the panel was inclined to believe that Delbert Parker requested that his funds be paid to him and that respondent failed to do so as required by DR 9-102 (B)(4). There may have been a conflict as to the precise amount the Parkers were "entitled to receive" on account of attorney fees owed respondent by the Parkers. However, the panel believed it significant that notwithstanding those unpaid fees, respondent sent Delbert Parker his check in the amount of $10,000.00 drawn on his special account. Such conduct constitutes a violation of DR 9-102 (B)(4).

DR 9-102 (B)(4) provides an attorney shall:

"Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." 230 Kan. cxxviii.

Respondent claims he always followed his clients' instructions. The evidence shows that the respondent failed to disburse the funds to the Parkers when requested. Parker denies ever instructing respondent to hold the funds after the release of the Canadian garnishment.

The conduct of respondent in withdrawing the Parkers' funds

from his special account by making cash withdrawals over a period of time and the issuance of an insufficient fund check to Delbert Parker appeared to the panel to constitute conduct involving dishonesty and adversely reflects on respondent's fitness to practice law. The panel concluded that such conduct violates DR 1-102 (A)(4) and DR 1-102 (A)(6).

DR 1-102 (A) provides:

"A lawyer shall not:

"(1) Violate a Disciplinary Rule.

"(2) Circumvent a Disciplinary Rule through actions of another.

"(3) Engage in illegal conduct involving moral turpitude.

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law." 230 Kan. cxi.

The respondent claims he delayed putting the necessary funds into his account to protect the Parkers' money, and before he deposited the funds Parker notified him that the check would not be cashed. If respondent's claim is true, he was assisting his client's effort to secrete funds from creditors.

Whether violations are found depends upon whose version of the events is believed. We agree with the hearing panel's conclusions. Certain undisputed facts weigh heavily: the respondent did not place the clients' funds in an interest bearing account as requested or withdraw the entire amount of Parkers' money at one time; his account never contained sufficient funds to cash the $10,000.00 check; he never stopped payment on the check after being advised Parker would not cash the check; the respondent lost his register of the special bank account and failed to replace his lost records. In addition, DR 9-102 (A) does not provide for an exception to the requirement of placing a client's fund in an identifiable bank account fund or a place of safekeeping even at the client's request or consent. One cannot circumvent a disciplinary rule at the request of a client.

The respondent contends the punishment of suspension from the practice of law, suggested by the panel, is too severe. In *State v. Scott*, 230 Kan. 564, 639 P.2d 1131 (1982), this court reviewed past court decisions in disciplinary cases from this state involving ethical violations and the penalties involved. This court stated on page 572:

"Among the matters to be considered in determining the nature and extent of punishment or discipline for a breach of professional responsibility, this court may consider in mitigation the following: (1) Whether restitution has been made; (2) previous violations or the absence thereof; (3) previous good character and reputation in the community; (4) the present or past attitude of the attorney as shown by his cooperation during the hearing and acknowledgement of the transgression; (5) letters from clients, friends and lawyers in support of the character and general reputation of the attorney; and (6) any statement by the complainant expressing satisfaction with any restitution made and requesting no discipline. 7 Am. Jur. 2d, Attorneys at Law § 52, p, 112; *State v. Stakes,* 227 Kan, 711, 608 P.2d 997 (1980) (aggravating or mitigating circumstances); *State v. Leon,* 229 Kan. 178, 621 P.2d 1016 (1981) (previous record of professional conduct); *In re Ratner,* 194 Kan. 362, 399 P.2d 865 (1965) (testimony as to attorney's reputation and character)."

Under the circumstances, we believe the Board's recommendation for indefinite suspension is appropriate.

IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED AND AD-JUDGED that the respondent be suspended from the practice of the law for an indefinite period. The costs of this action are assessed to respondent.

Effective this 5th day of July, 1983.