**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Ray SULLINS, Respondent.**

No. 96–1471.

Supreme Court of Iowa.

Dec. 18, 1996.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

James Cook, West Des Moines, for respondent.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

■ This lawyer discipline case was originally brought in three counts. The grievance commission determined one of them to be unfounded and on our de novo review of the record we agree. We hence proceed as if only two counts had been brought. As to these counts, we agree with the commission that the attorney should be publicly reprimanded.

Respondent Ray Sullins was admitted to practice in 1971, concentrating in recent years on family law with some emphasis on juvenile court. In 1986 he received a public reprimand by the ethics committee (now the Iowa supreme court board of professional ethics and conduct) because of his failure to respond to an ethics investigation by a local bar association's ethics committee. In 1992 we admonished him for neglect of his appellate practice.

No neglect is implicated in the first of the two counts involved here. The charge is that, in his zeal and aggressiveness in representing his client, Sullins communicated with a child witness without consent of her attorney in violation of DR 7–104 (prohibiting a lawyer from communicating with a party "known to be represented" by a lawyer without first obtaining that lawyer's consent).

Sullins was approached by Richard H. who said he had been questioned by the police, was told he failed a polygraph test, and that criminal charges would be filed the following day. During his interview with Richard H., Sullins concluded the sex abuse charge was imminent, but that prosecutors would gather their case by filing a CINA proceeding (child in need of assistance) (*see* Iowa Code §§ 232.87–.104 (1993)). Sullins testified that he feels an extraordinary cynicism concerning the operations of the Iowa department of human services and apparently also concerning police officers with whom the department works. So he advised a vigorous resistance

in the CINA proceeding as well as in the criminal prosecution.

Sullins' fees were discussed in detail. It was the client's choice to pay a flat fee for defending all proceedings. It was set at $3500, an amount the commission did not consider inappropriate. The fee agreement was initially an oral one; the client testified it was because of his repeated insistence that the agreement was placed in writing three weeks later.

Sullins acted quickly, keeping a wary, though certainly not a scrupulous, eye on the ethical prohibition from interviewing a represented client without permission. Richard H. told Sullins he was uninformed concerning the basis for the charges and suggested Sullins talk with his wife. Sullins then called Mrs. H. and asked her to visit with her daughter, to take notes, and to meet with him later. Stating she did not know how to phrase the questions, Mrs. H. invited Sullins to the house in order to personally interview the child. Sullins did so the same night.

Sullins first went to the courthouse. There he visited about the CINA matter with an assistant county attorney and learned that a CINA petition was indeed being filed. At the end of office hours the same day a deputy clerk of court told Sullins a file had been opened but that no order appointing an attorney for the child had yet been placed in it. Absence of such an order must however be considered in the light of the circumstances. Sullins admits he knew two more things. He knew an order appointing a lawyer for the child is routine and would be forthcoming. He also knew a certain delay can be expected between the entry and filing of orders in a busy clerk of court's office. We think DR 7–104 was violated.

The interview with the child furnished Sullins with valuable defense evidence but ended up disqualifying him from completing his representation. Because of the information, Sullins became a potential trial witness so the juvenile court ordered him to withdraw. Another attorney completed the defense for

which he charged, and for which the client paid, $500.

Sullins successfully defended the second count as to its merits, but ran afoul of DR 1–102(A)(5) (conduct that adversely reflects on the administration of justice) by what has become colloquially labeled "Stonewalling." That is, Sullins refused to respond to inquiries by the ethics committee of a local bar association. The count was derived from Sullins' service for a client our grievance commission found not credible. That client had many complaints about the services but the commission rejected them all, though it did mildly criticize Sullins' somewhat haphazard method of documenting his work and keeping the client apprised.

█ Like the commission, we reject this client's complaint. Also like the commission, we take very seriously Sullins' failure to respond to the local bar ethics committee. Even where the charge is later proved to be unfounded, we expect and demand that attorneys cooperate with discipline investigations. *Committee on Prof'l Ethics & Conduct v. Paulos*, 410 N.W.2d 260, 261 (Iowa 1987). When such inquiries are made, the attorney should bear in mind that our ethics board, or an ethics committee of a local bar association, is serving for this court.

For the foregoing misconduct, Ray Sullins is hereby publicly reprimanded. We assume he has repaid Richard H. for the $500 paid the successor attorney after his withdrawal. Sullins conceded he owes this amount. We retain jurisdiction in the matter and order that within twenty days following the filing of this opinion Sullins certify to our clerk that he has paid Richard H. the $500.

**ATTORNEY REPRIMANDED.**