Beverly **BALTZLEY** and **C.P.A.L.S.**
**Corporation, Appellees,**

v.

Ray **SULLINS, Appellant.**

No. 99–1032.

Supreme Court of Iowa.

April 3, 2002.

Rehearing Denied May 24, 2002.

Ray Sullins, Clive, pro se.

Lawrence L. Marcucci and John C. Conger of Marcucci & Conger, P.L.C., West Des Moines, for appellees.

LARSON, Justice.

Attorney Ray Sullins, who was the defendant in a legal malpractice suit, has appealed from a district court judgment entered after he failed to appear following service of original notice on him. He contends the court failed to properly apply Iowa Rules of Civil Procedure 107(b) and 231(b).[1] We reject his arguments.

### I. *Facts and Prior Proceedings.*

Beverly Baltzley and C.P.A.L.S. Corporation (plaintiffs) filed their petition against Sullins on December 11, 1998. Sullins was personally served with the petition and original notice on December 16. He did not appear, and on January 12, 1999, the plaintiffs served a "notice of intent to file written application for default," in compliance with Iowa Rule of Civil Procedure 231(b). Thirteen days later, on January 25, 1999, the plaintiffs' request for entry of default was granted, and an evidentiary hearing was scheduled to determine damages. Sullins filed an answer later that same day.

On March 4, 1999, Sullins filed a motion to set aside the default. The plaintiffs resisted, and the court scheduled a hearing for May 18, 1999. Sullins failed to appear for the hearing, and his motion to set aside the default was overruled. The court heard evidence on the plaintiffs' damages at this hearing and, on June 7, entered a $750,000 judgment against Sullins.

Sullins raises six issues, but we find potential merit in only two: (1) whether rule 107(b) extends the ten-day grace period accorded to defaulting parties under rule 231(b); and (2) whether the judge, as opposed to the clerk, had the authority to enter the default.

---

1. These rules have recently been renumbered as rules 1.443(2) and 1.972(2), respectively.

## II. *Application of Rules 107(b) and 231(b).*

Rule 231 provides in relevant part:

*b. Application.* Requests for entry of default under rule 231(a) shall be by written application to the clerk of the court in which the matter is pending. No default shall be entered unless the application contains a certification that written notice of intention to file the written application for default was given after the default occurred and at least ten days prior to the filing of the written application for default. A copy of the notice shall be attached to the written application for default. If the certification is filed, the clerk on request of the adverse party, must enter the default of record without any order of court.

*c. Notice.*

. . . .

(3) Computation of time. The ten-day period specified in R.C.P. 231(b) shall begin from the date of mailing notice, not the receipt thereof.

The plaintiffs mailed this ten-day notice to Sullins on January 12, 1999, but he did not respond within the ten days. On the thirteenth day after the notice was sent, the plaintiffs filed a motion for default judgment, the court entered default against Sullins, and the court scheduled a hearing to assess damages. Sullins, however, argues that the ten-day period had not expired because rule 107(b), called the "mailbox rule," entitled him to an additional three days to respond to the notice of intention to file for default.

Rule 107(b) is a general rule extending time to respond to mailed notice. The issue is whether it applies under the circumstances of this case. The rule provides:

*b. Additional time after service by mail.* When by these rules a party has the right or is required to do some act within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, three days shall be added to the prescribed period. Such additional time shall not be applicable where a court has prescribed the method of service of notice and the number of days to be given or where the deadline runs from entry or filing of a judgment, order or decree.

The effect of rule 107(b) on the ten-day period between mailing of a "notice of intention to file the written application for default" and filing the application under rule 231(b) is not clear in the wording of the rules. Sullins argues he has the right under rule 231(b) to file an answer or motion within ten days of plaintiffs giving notice and that rule 107(b) gave him three additional days, which would extend the time to January 25. He filed his answer on that day, so he was within the allowable time, according to him.

The plaintiffs counter that rule 107(b) is a general statute, while rule 231 is specific and therefore controls. Rule 231 has its own provision regarding mailed notice, which begins the ten-day period with mailing, not receipt of the notice. *See* Iowa R. Civ. P. 231(c)(3). The plaintiffs argue that ten days from mailing would expire on January 22, and Sullins' answer on January 25 was not timely to prevent the entry of a default judgment.

The plaintiffs argue that the specific mailing provision in rule 231(c)(3) is a self-contained method of computing time. That rule prescribes a specific *starting* point, *i.e.,* mailing, for computing the ten-day period. However, virtually all service of papers is effective when mailed. "Service [of pleadings and other papers] shall be made by . . . mailing . . . a copy to the attorney or to the party . . . [and] *[s]ervice*

*by mail is complete upon mailing.*" Iowa R. Civ. P. 106(b) (emphasis added).[2] The problem is whether rule 231(c)(3) provides a conclusive *ending* point. Does the grace period end ten days after mailing, as the plaintiffs argue, or ten days after mailing plus three days, as Sullins argues? Reading rule 107(b) and rule 231(c)(3) together, we conclude the ten-day period is not extended by rule 107(b) because rule 231(c)(3) does more than establish a starting point for the running of the ten-day period. It establishes a total period for responding to the notice, and that is ten days. This is the only interpretation of rule 231(c)(3) that will give that rule any independent significance because, if all it does is establish a beginning point, it is redundant to rule 106. The gist of rule 231(b) and (c) is to "cut some slack" to a defaulting party, but ten days in addition to the original twenty days is sufficient. Three more days need not be added. Under an analogous federal rule, a defaulting party is entitled to only three days, not ten, and even that extension is conditioned on the party's having filed an appearance, which Sullins had not done. *See* Fed. R.Civ.P. 55(b)(2).

The court properly entered the order for default after ten days following mailing of the notice and did not err in refusing to extend it under rule 107(b).

### III. *Was the Judge Authorized to Enter the Default Judgment?*

■ Under rule 231(a)

[i]f a party ... is in default under R.C.P. 230(a) [for failing to serve and file a motion or answer] ... the clerk shall enter that party's default in accordance with the procedures set forth below *without any order of court.* All other defaults shall be entered by the court.

(Emphasis added.) Rule 231(b) provides in relevant part:

If the certification [of mailing the ten-day notice] is filed, the *clerk* on request of the adverse party, must enter the default of record *without any order of court.*

(Emphasis added.)

In this case, the clerk did not enter the default; the judge did. Sullins contends the only authorization for a judge to enter a default is under the last sentence of rule 231(a), which states "[a]ll other defaults shall be entered by the court." Sullins argues that, as this is not one of the "other" defaults, the court acted without authority.

Some insight into the background of rule 231(a) may be found in a committee comment to an earlier version of the rule, explaining why the clerk is authorized to enter defaults:

Only a few counties in this state have a judge of the District Court continuously present so that defaults can be promptly entered at all times. Therefore, it was necessary to provide some other method for entering defaults, in order that all counties might be adequately served. It was felt that the Clerk of Court was the logical and proper person to do this.

Iowa R. Civ. P. Ann. 231 cmt., at 442 (3d ed.1970). The provision for entry of defaults by the clerk was obviously designed to expedite default-judgment entries, not to frustrate them. Construing rule 231 to prohibit judges from exercising concurrent authority to enter default judgments would frustrate the purpose of the rule. According to an attorney general's opinion,

---

**2.** Renumbered as rule 1.442(2).

the act of entering defaults has always been one of the proper functions of the Court or Judge, and while this power has now been partially delegated to the Clerk of the District Court, in so doing, we do not believe that it was the intention of the Legislature to deprive the Court of its inherent power ... to also enter the default. ...

1946 Op. Iowa Att'y Gen. 170, 171.

Federal Rule of Civil Procedure 55(a) similarly authorizes the clerk to enter a default. One authority has said "[t]he fact that Rule 55(a) gives the clerk authority to enter a default is not a limitation on the power of the court to do so." 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2682, at 19 (1998); *see also Downing v. O'Brien,* 325 A.2d 526, 528 (Me.1974), *overruled on other grounds by Architectural Woodcraft Co. v. Read,* 464 A.2d 210, 212 & n. 5 (Me.1983); *Rogers v. Lyle Adjustment Co.,* 70 N.M. 209, 372 P.2d 797, 798–99 (1962). The action of the clerk in entering a judgment under terms dictated by statute is merely ministerial. *Downing,* 325 A.2d at 527. In this case, the court as well as the clerk had authority to enter the default.

We have considered the remaining issues raised by Sullins but find no merit in any of them and conclude they do not warrant discussion. We find no error in the proceeding of the district court and therefore affirm.

**AFFIRMED.**