**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Ray SULLINS, Respondent.**

**No. 02–0396.**

Supreme Court of Iowa.

July 17, 2002.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Ray Sullins, Clive, respondent, pro se.

STREIT, Justice.

An Iowa attorney is charged with neglect of client matters and improprieties concerning the handling of the retainer fees for six different clients. The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint with our Grievance Commission against Ray Sullins, alleging he violated several ethical rules and the Board recommended we revoke Sullins' license to practice law. Our review is required by Iowa Court Rule 35.10 (2002). We agree with the Commission's findings of misconduct and its recommended sanction.

## I. Background and Facts

Ray Sullins is again brought before this court on charges of neglect of client matters and improper handling of retainer fees. The Iowa Supreme Court Board of Professional Ethics and Conduct initiated attorney disciplinary proceedings against Sullins based on his unprofessional conduct with six separate clients. All but one complaint alleges neglect of a client's legal matters. All six complaints allege one or more improprieties concerning Sullins' handling of his clients' retainer fees. Two complaints allege Sullins did not inform his clients of his June 1, 2000, suspension from the practice of law. We will address the details of each charged ethical violation below.

## II. Scope of Review

We review the findings and recommendations of the Grievance Commission de novo. Iowa Ct. R. 35.10. We give respectful consideration to the Commission's findings and recommendations, but are not bound by them. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski,* 606 N.W.2d 11, 13 (Iowa 2000). The Board has the burden to prove misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman,* 619 N.W.2d 407, 409 (Iowa 2000).

## III. The Commission's Findings

The Commission made numerous findings with respect to seven counts of misconduct against Sullins. The first six counts relate to Sullins' handling of each of six clients' cases. The seventh count regards Sullins' mishandling of retainer fees for five of his clients. We will discuss each count in turn.

### A. Count I: John Mersch

Sullins agreed to represent John Mersch in his pursuit of a civil and criminal action against the bouncers of a bar with whom Mersch fought. Besides the civil action, Sullins led Mersch to believe Sullins could file criminal charges against the bouncers. Mersch's wife paid Sullins a $500 retainer

fee. Sullins did not place this money into a trust account. Sullins never contacted Mersch after the initial contact. After repeated attempts to contact Sullins by telephone, Mersch gave up. Sullins admits he was dilatory in not informing Mersch he could not get criminal charges filed against the bouncers. Based on these facts, the Commission concluded Sullins did neglect Mersch's case in violation of DR 7–101(A)[1] and DR 1–102(A)(1),[2] (5)[3] and (6).[4] The Commission concluded Sullins earned the $500 retainer and as such was under no obligation to return any of it.

### B. Count II: Cason

Shortly after Rebecca Cason married her husband, he was put in jail. Cason contacted Sullins for his help in the dissolution of this marriage. On June 22, 1999, Cason paid Sullins $500 for future services. He did not place this money in a trust account. Sullins did not file the dissolution petition until four months after their initial meeting. He claimed it would make the divorce easier if he waited until after her husband was sentenced. Cason wrote a letter to Sullins firing him and requesting return of her $500. In response, Sullins told Cason he would file the dissolution papers immediately. Sullins filed the petition November 2, 1999, but did not complete the dissolution until February 2, 2002. Based on these circumstances, the Commission concluded Sullins neglected Cason's dissolution and thereby violated DR 7–101(A) (fail to render services to client) and DR 1–102(A)(1) (violate disci-

plinary rule), (5) (conduct prejudicial to justice), and (6) (conduct adversely reflects on fitness to practice law).

### C. Count III: Rolek

On April 15, 1999, Dr. Dennis Rolek retained Sullins to challenge findings of the Department of Human Services (DHS) that Rolek abused his son. Rolek gave Sullins a $1000 retainer fee which Sullins cashed the same day and deposited $700 into a trust account. Rolek had thirty days from April 1, 1999, within which to appeal the final DHS decision. Rolek had great difficulty contacting Sullins to see if Sullins filed the appeal. Sullins sent the petition for judicial review to the clerk on May 3, 1999. It was filed on May 4. The DHS filed a motion to dismiss. Sullins did not file a resistance to the motion and he did not appear at the hearing.

Sullins later filed a written resistance to the motion and appeared at a later hearing. The court dismissed the case as it lacked jurisdiction because the petition was not timely filed (thirty days after the April 1 letter). Sullins admitted there was no excuse for his failure to appear at the original hearing. Sullins attempts to skirt responsibility for the dismissal of Rolek's petition claiming Rolek's time to appeal expired before Rolek even sought Sullins' assistance. This is simply not true. With regard to the $1000 retainer fee, Sullins acknowledged he should have refunded the money to Rolek.

---

1. The rule provides, in part, a lawyer shall not intentionally: (1) Fail to seek the lawful objectives of a client through reasonably available means permitted by law and the disciplinary rules, except as provided by DR 7–101(B); (2) Fail to carry out a contract of employment entered into with a client for professional services. DR 7–101(A).

2. A lawyer shall not violate a disciplinary rule. DR 1–102(A)(1).

3. A lawyer shall not engage in conduct that is prejudicial to the administration of justice. DR 1–102(A)(5).

4. A lawyer shall not engage in conduct that adversely reflects on the fitness to practice law. DR 1–102(A)(6).

The Commission found Sullins neglected Rolek's case. Though the initial $1000 retainer fee was not excessive, the Commission concluded Sullins effectively collected an unreasonable fee by not refunding the money Sullins admittedly owed Rolek. The Commission concluded Sullins violated DR 6–101(A)(3) (neglect of client's matter), 7–101(A) (fail to render services to client), 2–106 (collect clearly excessive fee), and 1–102(A)(1)(violate disciplinary rule), (5) (conduct prejudicial to justice), and (6) (conduct adversely reflects on fitness to practice law).

### D. Count IV: Olson

Aaron Olson hired Sullins as counsel on a domestic relations matter being handled by another attorney whom Olson later terminated. The fee agreement consisted of an initial payment of $500 with another $500 when Olson was able to pay. In receipt of two checks totaling $1000, Sullins deposited neither into a trust account. Sullins claimed they agreed the money could be immediately distributed.

On the day of trial, Sullins did not appear. Sullins did not tell Olson of his suspension that began only two weeks before trial. Olson, left to represent himself, attempted to offer several documents into evidence. However, opposing counsel objected because the documents were not provided ten days before trial. The court sustained the objection and Olson could not offer these papers.

Olson claimed he retained Sullins to represent him at mediation on the matter and at trial. Sullins told Olson he might not be available for the trial because of an upcoming vacation or other commitment. Sullins told Olson in the event he could not appear, he would make sure another attorney would represent Olson at trial. Sullins, however, asserts he never promised Olson he would appear in court, represent him in

mediation, or file any documents with the court or opposing counsel. The Commission found Sullins' testimony more credible than Olson's. The Commission did not articulate on which issues it found Sullins' testimony more credible. Despite a credibility finding in favor of Sullins, the Commission still found he violated Iowa Court Rule 35.21 for failing to tell Olson of his suspension and its effect on Sullins' ability to represent Olson. Knowing he would be unable to represent his client at trial because of the suspension, Sullins should have found another attorney to handle Olson's case. The Commission concluded Sullins violated DR 6–101(A)(1) (handle a legal matter the lawyer knows that the lawyer is not competent to handle without associating with a lawyer who is competent to handle it) and DR 1–102(A)(1) (violate disciplinary rule), (4) (conduct involving dishonesty), (5) (conduct prejudicial to justice), and (6) (conduct adversely reflects on fitness to practice law).

### E. Count V: Brown

In April 1995, Larry Brown hired Sullins asking him to: (1) file a contempt action against his ex-wife; (2) file an action to modify child custody provisions of a Texas marriage dissolution decree entered six months earlier; and (3) file a slander action against his ex-wife and her mother. Sullins contends the fee agreement provided $5000 for services already rendered. On April 7, 1995, Brown signed the fee agreement and gave Sullins two money orders for $5000 each. Sullins did not deposit any of this money into a trust account. The court dismissed the contempt action on jurisdictional grounds and Sullins never refiled it. Sullins did not initiate slander proceedings against the ex-wife and her mother. He did file a petition in Iowa to modify the Texas dissolution. Because Sullins did not respond to

the ex-wife's discovery requests, the court entered a $250 sanction judgment against Sullins personally. At the time of the hearing, Sullins had not yet paid this money.

The Commission found Sullins neglected his client's matter by failing to respond to the discovery requests. However, the Commission concluded Sullins did not violate any disciplinary rules regarding the fee arrangement. The fee arrangement issue was disputed, and it appeared to the Commission Sullins may have earned the first $5000 check Brown gave him at the time Sullins received the money. As to the other $5000 check, the Commission found Sullins did not perform significant work. Sullins failed to file a statement with the board in response to Brown's complaint. The Commission found Sullins violated DR 6–101(A)(3) (neglect) and 1–102(A)(1) (violate a disciplinary rule), (4) (conduct involving dishonesty), (5) (conduct prejudicial to justice), and (6) (conduct reflects adversely on fitness to practice law).

### F. Count VI: Cooper

Jerry Cooper and his wife contacted Sullins to determine whether they should pursue litigation regarding the harassment of their daughter at school. Coopers gave Sullins a check for $2500 which Sullins promptly cashed. Though the Coopers asked Sullins to place this money into a trust account, he did not. The Coopers told Sullins to interview a list of people about the harassment. However, Sullins did not contact anyone on this list. Sullins maintains he earned the $2500 retainer but was unable to say how much time he spent on the case. The Commission found Sullins collected a clearly excessive fee from the Coopers and failed to return the unearned portion of the retainer.

In November 1999, Sullins appeared before the Commission on charges of "stone-walling" the Board's inquiries. For this violation, we suspended Sullins' license to practice law beginning on June 1, 2000. The month of the hearing on this charge was the same month Sullins first met with the Coopers. His last meeting with the Coopers was May 24, 2000. Sullins did not tell the Coopers he had been suspended. Sullins left the Coopers' case open so they could decide whether they wanted to file a lawsuit. Finding the Coopers' matter was still pending on June 1, 2000, the Commission concluded Sullins violated Iowa Court Rule 35.21 (failure to inform client of suspension). The Commission also found Sullins violated DR 9–102 (all funds paid by client to lawyer shall be deposited into trust account), DR 2–106(A) (collect clearly excessive fee) and DR 1–102(A)(1) (violate a disciplinary rule), (4) (conduct involving dishonesty), (5) (conduct prejudicial to justice) and (6) (conduct adversely reflects on fitness to practice law).

### G. Count VII: Trust Account Violations

Sullins collected a retainer fee from Mersch, Cason, Brown, Rolek, and Olson. Prior to obtaining the retainer fees, Sullins did not perform substantial services for any client and did not earn a significant portion of the retainer fee. Sullins did not place any of the retainer fees into a trust account, save $700 of Rolek's $1000 retainer fee. Because Sullins claims his records in each of the above five clients' cases were stolen, he cannot produce any records to prove where the funds were located. The Commission found Sullins violated DR 9–102 (all funds paid by client to lawyer shall be deposited into trust account) and 9–103(A) (lawyer shall maintain on a current basis books and records to demonstrate compliance with DR 9–102).

### IV. Misconduct

We find the Board has proven by a convincing preponderance of the evi-

dence Sullins violated several rules of professional responsibility. We begin with DR 7-101(A). This rule provides a lawyer shall not intentionally fail to seek the lawful objectives of a client, fail to carry out a contract of employment entered into with a client for professional services, or prejudice or damage a client during the course of the professional relationship. The Board need not prove Sullins intentionally injured his client to show a violation of DR 7-101(A). *Comm. on Prof'l Ethics v. Gill*, 479 N.W.2d 303, 305 (Iowa 1991). In connection with this rule, Sullins also violated DR 6-101(A)(3) which provides a lawyer shall not neglect a client's legal matter. Neglect may be proven without evidence of monetary harm. *Id.* at 306.

■ Sullins violated DR 7-101(A) with respect to his dealings with clients Mersch, Cason, and Rolek. In each case, Sullins did not perform the tasks his clients required, prejudicing his clients beyond repair. He would not contact his clients and it was virtually impossible for them to get in touch with Sullins. It took him over two and a half years to complete the marriage dissolution. He admits there was no reason for the substantial delay. Sullins also failed to timely appeal a finding of child abuse against his client. Conduct of this nature certainly constitutes neglect.

■ Next, we find Sullins violated DR 1-102(A)(1), (5), and (6). These rules provide a lawyer shall not violate a disciplinary rule, engage in conduct that is prejudicial to the administration of justice or engage in any other conduct that adversely reflects on the fitness to practice law. Sullins violated this rule with respect to each of the six original complainants. The Commission was correct in its finding that Sullins' "slipshod" manner of handling his cases resulted in incomplete resolution of his clients' affairs. Sullins did not file lawsuits, did not comply with discovery

requests, and did not investigate his clients' cases. Certainly, such practices strongly suggest Sullins is not capable of practicing law at this time. His conduct reflects poorly on his own personal integrity and more generally on the profession of law itself.

■ With regard to Sullins' collection of legal fees, he violated DR 2-106(A) which provides a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. We have before shown our contempt for such outrageous conduct pledging to elevate the sanctions for future violations. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Torgerson*, 585 N.W.2d 213, 214 (Iowa 1998). Sullins collected a clearly excessive fee from both Rolek and Cooper. Cooper gave Sullins a $2500 retainer fee which Sullins did not deposit into a trust account despite being asked to do so. Sullins did very little, if anything, in furtherance of Cooper's case. Then, Sullins kept the unearned portion of Cooper's retainer. Sullins also admitted he should have returned the unearned fees to Rolek. Though the original retainer fee of $1000 was not excessive, it was unreasonable for Sullins not to return the portion that he admits should have been refunded to Rolek.

■ Sullins also violated Iowa Court Rule 35.21 for failure to inform his clients of his suspension from the practice of law. His license to practice law was suspended on June 1, 2000. *Sullins*, 613 N.W.2d at 656. He did not inform Olson or Cooper of his suspension. Because Sullins did not inform his clients he was suspended from the practice of law, we conclude he also violated DR 1-102(A)(1), (4), (5), and (6). These rules provide a lawyer shall not engage in conduct involving dishonesty, conduct prejudicial to the administration of

justice, and conduct that adversely reflects on the fitness to practice law.

Finally, Sullins violated the rules of professional conduct regarding the handling of clients' trust accounts in violation of rules DR 9–102 and 9–102(A). "All funds of clients paid to a lawyer ... including advances for costs and expenses, except retainer fees paid on a regular and continuing basis, shall be deposited in one or more identifiable interest-bearing trust accounts...." DR 9–102(A). Sullins did not place the funds in a trust account, but he paid himself immediately for services not yet performed.

■ Sullins first attempts to excuse his conduct claiming the fees were not retainer fees but were "non-refundable, flat fees" not subject to the trust account requirement. However, simply labeling the initial funds as "non-refundable, flat fees" does not save Sullins from his obligation to deposit them into trust accounts. In *Apland*, we stated,

> We see the flat fee as nothing more than an advance fee payment which a majority of authorities now agree must be deposited in a client trust account.... Funds remain the property of the client until the attorney earns them.... Requiring lawyers to deposit all advance fee payments in a client trust account provides a "safe harbor" approach for all lawyers, which we adopt. We hold that lawyers must deposit all advance fee payments into a client trust account.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 55–56 (Iowa 1998). A flat fee will ultimately be in satisfaction of "all work to be done, whether it be relatively simple and of short duration, or complex and protracted." *Id.* at 55 (quoting ABA Comm. on Ethics and Prof'l Responsibility, Informal Op. 1389 (1977)). Requiring lawyers to deposit all advance fee payments into a client trust

account "emphasiz[es] the fact that the relationship between the client and the attorney is a fiduciary one." *Id.* at 56.

■ Sullins seems to argue that it does not matter whether he deposits the flat fees into a trust account because the result is the same in either case—the attorney keeps the entire amount. In so arguing, he clearly misunderstands the concept that advance fees are the *client's* funds until the attorney earns them. The attorney may only withdraw funds from the trust account as work is done. Then, presuming the flat fee is fair, the attorney is entitled to the entire amount when he or she completes the necessary services.

■ Sullins also attempts to defend his conduct by asserting client consent to immediately cash the upfront fees waives the obligation to deposit them into a trust account. Contrary to Sullins' assertions, most of his clients did not recall giving Sullins permission to pay himself upfront. Even if Sullins had permission, DR 9–102(A) still requires a lawyer to deposit *all* advance fee payments into a client trust account. Allowing permission as an exception to this rule would defeat the strong policy reasons underlying it. *See id.* Even if a client tells her attorney to withhold funds from a trust account, the attorney's failure to deposit the funds into a trust account would result in an ethics violation. *See State v. Pringle*, 233 Kan. 726, 733, 667 P.2d 283, 287–88 (1983). Because Sullins thought that obtaining permission would satisfy any ethical obligations, we are even more confident of his profound misunderstanding of the attorney-client relationship and his ethical responsibilities.

■ Finally, Sullins also argues he did not violate any ethical rules by failing to provide an accounting of his services because none of his clients requested an accounting. However, we have stated

lawyers accepting advance fee payments must notify their clients in writing of the time, amount, and purpose of any withdrawal of the fee together with a complete accounting. No withdrawal of any part of the fee shall occur until the lawyer has rendered some services.

*Apland,* 577 N.W.2d at 59. It is clear that a lawyer is obligated to provide an accounting without being specifically asked to do so. *Id.* Sullins also contends he earned some of the initial "flat fees." However, the standard we set out above— a lawyer cannot withdraw money until he or she has rendered "some services"—has not been met in this case. In all of his clients' cases, except Cooper's, Sullins collected a retainer fee before performing substantial services. He did not deposit any of the retainer money into trust accounts, except perhaps $700 of Rolek's $1000 retainer. We therefore conclude the Commission has proven by a convincing preponderance of the evidence Sullins violated all of the charged rules of professional responsibility.

## V. Sanction

 We must determine the appropriate sanction given the serious level of Sullins' pattern of misconduct. In doing so, we consider both mitigating and aggravating circumstances. One such mitigating circumstance is an attorney's relative emotional and mental stability and its effect on the attorney's fitness to practice law. The record reflects a real concern that Sullins is functioning at some level of compromised emotional and mental stability. The first indication of this in the record involved Sullins' handling of the Rolek case. When Sullins did not appear for Rolek's court hearing on the motion to dismiss, Rolek contacted Sullins. When Rolek found Sullins, he "seemed confused, disoriented...." Rolek didn't think Sullins "really knew or remembered that he was

supposed to be in court that day." He further described Sullins as being "in a pretty sad physical and emotional state. He was either impaired by alcohol or drugs or something was impairing his physical performance. He was profoundly depressed. He was crying." "He was rambling on about problems with his wife, his son, financial problems." Rolek confronted Sullins about his suspicion of drug or alcohol use, but Sullins denied this allegation. Again at the hearing before the Commission, Sullins said he does not drink or use drugs.

The second indication of mental and emotional instability comes from Sullins himself. He addressed his repeated failure to complete tasks for his clients. Sullins repeatedly stated he is not ready to return to the practice of law. In fact, he has not yet petitioned for reinstatement from his last suspension. Sullins believes he may have Attention Deficit Disorder that is preventing him from attending to his professional obligations. In part, Sullins attempts to blame his lack of office support staff for his failure to adequately serve his clients. He admits he needs to seek professional help for both his personal and professional problems. Given the circumstances above, Sullins is not fit to continue the practice of law.

In fashioning a sanction we also consider the presence of aggravating factors. When we last dealt with Sullins, he received a stern warning. That warning was a harbinger of what we have before us today. In 1996, Sullins failed to respond to the local bar ethics committee. It was at this point when he was first warned, "[w]hen such inquiries are made, the attorney should bear in mind that our ethics board, or an ethics committee of a local bar association, is serving for this court." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins,* 556 N.W.2d 456, 457

(Iowa 1996). In 2000, we again reprimanded Sullins this time for his sloppy record keeping resulting in his failure to produce requested documents. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins,* 613 N.W.2d 656, 657 (Iowa 2000). There we counseled that

> [i]t should be unnecessary to again remind Sullins that our ethics board is an arm of this court, a point we tried our best to make clear in *Sullins,* 556 N.W.2d at 457. Sullins should consider the matter seriously if he is ever again asked to respond to our board's investigations because any future for him in the profession will be at stake.

*Id.*

Despite our previous words of warning, Sullins has again failed to comply with the board's requests to respond to Brown's complaint. Though he was repeatedly asked to respond to the complaint, Sullins sent two letters merely stalling his substantive response. He in fact never did file a response to Brown's complaint. Sullins also failed to comply with district court discovery requests in the Brown matter resulting in a $250 judgment against Sullins. The Board also requested several times that Sullins provide it with a copy of the final dissolution decree in the Cason matter. Sullins never responded. He also failed to timely respond to interrogatories and produce documents in this disciplinary proceeding. Sullins filed incomplete answers to the interrogatories only after the Commission sustained the motion to compel.

Sullins has a long record of prior attorney disciplinary actions. He was first publicly admonished in 1992 for dilatory prosecution of appellate matters. He was barred from handling new appellate cases for two years. Then in 1996, we again publicly reprimanded him for communicating with one of adverse interest while representing his client in the same matter and for "stonewalling" the ethics board of a local bar association. *Sullins,* 556 N.W.2d at 457. More recently, on June 1, 2000, we suspended Sullins' license to practice law for one year. The misconduct leading up to his last suspension was much the same as the allegations involved in the complaint before us. The complaints involved failure to communicate with the client, delay and procrastination, poor record keeping, and failure to account for retainer fees. His tardiness has once before led to a malpractice action. *See Baltzley v. Sullins,* 641 N.W.2d 791 (Iowa 2002).

In sum, Sullins has had numerous opportunities to alter his conduct and conform to the rules of professional responsibility. Despite these chances, he continues to operate with a pattern of serious ethical violations. With his record, we have no reason to believe that if we allow Sullins to petition for reinstatement to practice law in the future he would not continue to violate the rules of professional responsibility. We cannot continue to warn him.

We must bear in mind the purposes of attorney disciplinary proceedings which include: protecting the courts and the public from persons unfit to practice law, vindicating public confidence in the integrity of our system of justice, assuring the public the courts will maintain the ethics of the profession, and deterring other lawyers from similar misconduct. *Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Lyzenga,* 619 N.W.2d 327, 332 (Iowa 2000). The evidence clearly shows Sullins should not practice law. His conduct reflects a deep misunderstanding of his obligations as a lawyer and disrespect for this entire profession. We find the seriousness of these violations warrant revocation of his license to practice law.

Costs are assessed to Sullins pursuant to Iowa Court Rule 35.25.

**LICENSE REVOKED.**