# IN THE SUPREME COURT OF IOWA

No. 10 / 06-1760

Filed February 23, 2007

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD**,

      Complainant,

vs.

**STEVEN B. JOY**,

      Respondent.

_____

On review of the report of the Grievance Commission.

Grievance Commission reports respondent has committed numerous acts of neglect and other misconduct and recommends suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles Harrington and Teresa A. Vens, Des Moines, for complainant.

Steven B. Joy, Grand Junction, pro se.

**APPEL, Justice.**

In this matter, the Grievance Commission recommends suspension of Steven B. Joy's license to practice law in Iowa for a period of two years without possibility of reinstatement as a result of neglect on multiple matters and other professional misconduct under the Iowa Code of Professional Responsibility, which governed conduct of Iowa attorneys prior to July 1, 2005. The Commission further recommends that prior to any application for reinstatement, Joy undertake ethics training, obtain an evaluation from a licensed health care professional, and pay certain monetary amounts owed to former clients. While Joy did not participate in the hearing and has not appealed, we review attorney disciplinary matters de novo. After review of the entire record, we suspend Joy's license indefinitely, with no possibility of reinstatement for eighteen months, and adopt as our own most of the conditions on reinstatement recommended by the Commission.

## I.     Prior Proceedings.

Steven B. Joy is an Iowa attorney. He was admitted to the practice of law in Iowa in 1990. At the time of these disciplinary proceedings, Joy was a sole practitioner in Mechanicsville, Iowa.

On June 26, 2006, the Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Joy alleging five counts of ethical violations. Counts I through III alleged neglect and other professional misconduct in connection with three estates. Count IV alleged that Joy had failed to properly handle tax returns for a husband and wife. Count V alleged that Joy had failed to cooperate with the Board in connection with its investigation of complaints made against him.

Joy filed an answer before the Board generally denying the charges, but did not appear at the scheduled hearing on October 5,

2006. At the hearing, the Commission heard testimony from five witnesses. The Commission also received into evidence thirteen exhibits, which provided extensive documentation regarding the matters which Joy allegedly neglected as well as Joy's nonresponsiveness to inquiries of the Board.

On November 3, 2006, the Commission issued its Findings of Fact, Conclusions of Law, and Recommendation in this matter. The Commission found that Joy had neglected the three estates in question, disregarded various court orders, engaged in misrepresentations to the courts and clients, did not return unearned attorneys' fees in one case, and failed to cooperate with the Board on a number of occasions.

## II.    Standard of Review.

Review of attorney disciplinary proceedings is de novo. Iowa Ct. R. 35.10(1). In deciding the matter, the court considers the findings of fact and disciplinary recommendation of the Commission. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken,* 688 N.W.2d 812, 815 (Iowa 2004). The Board must prove ethical violations by a "convincing preponderance of the evidence." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams,* 675 N.W.2d 530, 531 (Iowa 2004). Upon review, this court may impose a greater or lesser sanction than the Commission recommended. Iowa Ct. R. 35.10(1).

## III.   Facts.

As required by Iowa Court Rule 35.10(1), we have conducted a de novo review of the entire record in this matter.

### A.    *Estate of Colleen M. Shulista.*

Count I of the petition related to Joy's handling of the estate of Colleen M. Shulista. The record shows that this matter involved a simple estate with only one small parcel of farmland. The evidence further

established that Joy did not complete the required work in a timely manner, which resulted in the district court clerk issuing two delinquency notices. After unsuccessfully attempting to establish communications with Joy through repeated phone calls and a certified letter, the executor hired another attorney to complete the work on the estate. The estate was open for over four years prior to closure. *See generally* Iowa Code § 633.473 (2003) (requiring closure of estate within three years unless otherwise ordered by the court).

Joy compounded his neglect by being less than candid with the court. For example, Joy responded to one of the delinquency notices by stating that the remaining work to be done was to obtain an income tax acquittance, prepare the final report, and prepare and file an affidavit for change of title. Joy failed to disclose that state and federal tax returns had not been prepared or filed.

### B. *Estate of Viola Irene Krumm Williams.*

Count II of the petition concerns the estate of Viola Irene Krumm Williams. The evidence established that Joy failed to complete the work on this estate in a timely manner. Because of his tardiness, the district court clerk issued seven notices of delinquency, and this estate remained open for a five-and-a-half-year period prior to closure.

In addition, the evidence established that Joy did not comply with orders of the court in this matter. After the clerk issued its fifth delinquency notice, Joy sought direction from the court, claiming he "had had no contact with Fiduciaries in this estate for an extensive period of time." The district court set the matter for hearing, directed Joy to mail notice to the fiduciaries and beneficiaries of the estate, and ordered Joy to file an affidavit with the court stating that mailing of the notice had been accomplished. On the date set for the hearing, neither Joy nor the

fiduciaries appeared. Joy also failed to file the required affidavit regarding notice to the fiduciaries and beneficiaries, as directed by the district court.

Eventually, as in the Shulista matter, the executors of the estate took matters into their own hands and filed a pro se application for a hearing. The district court complied with their request, and on the scheduled date, the executors, but not Joy, appeared. The district court entered an order requiring Joy to prepare a final report no later than July 15, 2003, or "appropriate sanctions shall be imposed." On July 15, Joy called the district court, stating that the final report would be mailed that same day. It was not. When the district court subsequently scheduled a hearing to show cause why sanctions should not be imposed, in light of Joy's noncompliance, Joy did not appear. The district court rescheduled the hearing, and to ensure notice, directed the sheriff to personally serve Joy. Joy again did not appear. An attorney who happened to be in the courthouse on other matters, however, advised the court that Joy was hospitalized. As a result, the district court rescheduled the hearing yet again.

The record does not clearly indicate what happened after the rescheduled hearing, but progress on the estate still was not made. The executors eventually wrote the district court a letter, stating that Steven Joy failed to appear at three hearings, and asking "where do we go from here?" In response to the letter, the district court scheduled another hearing, with the executors and their attorney directed to show cause why they should not be removed due to their failure to close the estate. Notice was sent to Joy by ordinary mail.

The executors appeared at the hearing in person, but Joy did not. In a post-hearing order, the district court removed Joy as attorney for the

estate. The court further ruled that Joy was not entitled to the second half of attorneys fees paid by the estate because the final report had not been filed and court costs not paid as required by rule 7.2 of the Iowa Rules of Probate Procedure. As a sanction for his failure to comply with prior court orders and for his failure to assist the fiduciaries in administering this estate, the district court ordered Joy to return $1,519.07 to the clerk for payment to the executors of the estate within ten days.

The record shows that Joy did not repay the amount in ten days. As a result, the district court entered a further order entering a $1,519.07 judgment against Joy in favor of the beneficiaries. The estate was finally closed after being open for a five-and-a-half-year period.

### C. *Estate of Scott David Boots.*

Count III of the petition concerned the estate of Scott David Boots. The record shows that a total of five delinquency notices were issued in this estate. Again, the record demonstrates that Joy did not attend scheduled court hearings and, on at least one occasion, failed to file an affidavit showing that notice of a hearing had been sent to fiduciaries as required by court order. As in the Shulista matter, the executors ultimately took matters into their own hands. They eventually discharged Joy and hired attorney Janette Voss to complete work on the estate.

At a hearing attended by Joy and Voss, Joy represented to the district court that the final report, the Iowa inheritance tax return, and all fiduciary income tax returns (state and federal) had been prepared. He further represented that he would deliver them to Voss within the next several days. In light of these representations, the district court ordered that the Iowa inheritance tax return and all fiduciary income tax

returns be filed in short order. Joy was further directed to file a compliance report with the clerk indicating that these actions had been taken. Joy did not deliver the documents, however, and did not file a compliance report as required by court order.

When the matter was set for another hearing, Joy was ordered to appear but again did not. Joy was ordered to turn over his entire file to successor counsel, and again failed to do so. Eventually the estate was closed, without Joy's further assistance, after being open for almost ten years.

### D. Tax Returns of Svobodas.

Count IV of the complaint concerned the tax representation of Charles and Colleen Svoboda. Joy had been a family friend of the Svobodas for years and had completed the couple's tax returns for over a decade. On March 13, 2002, Joy agreed to prepare the Svobodas' state and federal income tax returns for calendar year 2001. At that time, the Svobodas left with Joy relevant documentation, including depreciation schedules related to their farming business.

On April 15, Joy told the Svobodas that he was working on their returns, but had not yet completed them. He advised that he would file an extension that day. On April 30, Joy informed the Svobodas that he had filed an extension. On May 7, he told the couple that the returns would be completed the following week.

When there was no further communication from Joy, the Svobodas attempted to contact him at his office phone, which was disconnected, and by cell phone. On July 3, 2002, Charles Svoboda went to Joy's office, and saw Joy's auto parked behind it. When there was no answer at the office door, Charles left a note on the windshield of the car, asking Joy to contact them as soon as possible. Two hours later, the note had

been removed from the windshield, but Joy did not communicate with the Svobodas. In frustration, the Svobodas paid a patron to inform them when Joy was leaving a local bar. Eventually, the Svobodas tracked Joy down, and the attorney promised to return the records. Joy, however, failed to produce the records. Fortunately, the Svobodas were able to have the returns completed by another attorney. Because Joy did not file the extension, the Svobodas were initially penalized $1,354.23, which was later reduced to $94.10.

### E. Failure to Cooperate.

Count V of the complaint related to Joy's failure to cooperate with the Board. The evidence establishes that Joy received communications from the Board regarding a number of disciplinary matters and did not respond in a timely manner. When some of the Board's inquiries were sent, Joy was a resident at Teen Challenge of the Midlands, a religiously based, intensive residential counseling program in Colfax, Iowa. Because of his participation in the program and his lack of access to records and files, Joy sought an extension of time in which to respond. The Board granted him the requested extension. Joy, ultimately, left the Teen Challenge program, but did not provide the Board with substantive responses to its inquires. After the Board filed its complaint in this matter, Joy filed a conclusory answer denying most of the allegations, but did not participate in the hearing.

### F. Previous Discipline.

There is no record of prior discipline related to neglect of client matters or other professional misconduct. On January 5, 2004, however, Joy's license to practice law was suspended for failure to comply with the client security and continuing legal education requirements of this court.

## IV.    Ethical Violations.

### A.    *Neglect.*

In *Iowa Supreme Ct. Bd. of Prof'l  Ethics & Conduct v. Moorman,* 683 N.W.2d 549 (Iowa 2004), we observed that neglect has "generally been recognized to involve indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." 683 N.W.2d at 551 (citations omitted).  Neglect cannot be found if the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith.  *Comm. of Prof'l Ethics & Conduct v. Rogers,* 313 N.W.2d 535, 536 (Iowa 1981).  In the context of estate work, this court held that neglect occurs where a lawyer "repeatedly failed to perform required functions as attorney for the executor, repeatedly failed to meet deadlines, and failed to close the estate[s] within a reasonable period of time."  *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold,* 642 N.W.2d 288, 293 (Iowa 2002).  An attorney who neglects legal matters violates DR 6-101(A)(3) (providing a lawyer shall not neglect a client's legal matter) and DR 7-101(A)(2) (providing a lawyer shall not intentionally fail to carry out a contract of employment for professional legal services).

The Board clearly proved by a convincing preponderance of the evidence that Joy neglected the Shulista, Williams, Boots, and Svoboda matters.  The persistent pattern of delinquencies, missed deadlines, and evasive and misleading statements by Joy in each of these demonstrates neglect rather than mere inadvertence or mistake.  As a result, we find that Joy has violated DR 6-101(A)(3) and DR 7-101(A)(3) in each of these four matters.  *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v.*

*Ruth,* 656 N.W.2d 93 (Iowa 2002) (holding lawyer violated ethics rules by failing to close estate within three years).

In addition, a lawyer who fails to meet applicable deadlines engages in conduct that is prejudicial to the administration of justice and violates DR 1-102(A)(5) (prohibiting conduct prejudicial to the administration of justice). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen,* 712 N.W.2d 101, 105 (Iowa 2006); *Comm. on Prof'l Ethics & Conduct v. Thomas,* 495 N.W.2d 684, 686 (Iowa 1993). Joy has repeatedly violated this canon of professional ethics as well.

### B. *Failure to Comply with Court Orders.*

Under our disciplinary rules, a lawyer cannot disregard a ruling of a tribunal made in the course of a proceeding. *Honken,* 688 N.W.2d at 820; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett,* 653 N.W.2d 377, 381 (Iowa 2002). An attorney who disregards a court order violates DR 7-106(A) (a lawyer shall not disregard a ruling of a tribunal).

In this case, there is at least a question regarding whether Joy had actual knowledge of various court orders entered in the proceedings. The record indicates that during calendar year 2003, Joy experienced considerable instability in his life. The evidence shows that at some time in June 2003, for example, his office phone was disconnected. Later in 2003 it appears that he no longer resided in Mechanicsville and may have lived temporarily with his mother in Jefferson, Iowa. The record also establishes that for a period of time prior to January 6, 2004, Joy resided in Colfax, Iowa, while participating in Teen Challenge of the Midlands. Nearly all of the orders involved in these matters were sent to post office boxes in Mechanicsville, Iowa.

The evidence shows, however, that on February 7, 2003, Joy filed virtually identical applications for orders in the Williams and Boots

matters seeking to explain the delinquencies and buy more time to close the estates. Contemporaneously with the filing of these applications, Joy filed with the district court clerk two orders which, among other things, set a hearing date on both matters for April 11, 2003, directed Joy to serve notice on fiduciaries and residuary beneficiaries, and ordered Joy to file an affidavit stating that the prescribed notice had occurred. Joy must have had knowledge of these orders, which he himself filed. The evidence shows that Joy violated DR 7-106(A) by failing to comply with the orders in both cases, with the predictable result that hearings had to be rescheduled, thereby causing further delay in the already delinquent estates.

In the Williams matter, the district court on June 13, 2003, entered an order requiring Joy to prepare a final report no later than July 15, 2003. This is about the time that Joy's office phone was disconnected. Although Joy did not attend the June 13, 2003 hearing, Joy himself called the district court judge on July 15, 2003, thereby demonstrating knowledge of the order and its requirements. He advised the district court judge that the final report would be mailed that same date. Joy violated DR 7-106(A) by not filing the final report in the Williams matter on July 15 or any time thereafter.

In the Boots matter, the district court, after a hearing on May 30, 2003, attended by Joy and the fiduciaries' personal attorney, ordered Joy to provide to the fiduciaries' personal counsel a final report, Iowa inheritance tax return, and all fiduciary tax returns for execution and filing. Joy was further ordered to file with the court a compliance report by June 27, 2003, confirming that these actions had been taken. The district court clerk mailed the order to Joy on June 2, 2003. Because it is clear that Joy received the June 13, 2003 order, mailed to him by the

district court in the Williams matter, we can only conclude that a similar court order mailed to Joy two weeks earlier was also received. Joy violated DR 7-106(A) when he failed to file the compliance report by June 27, 2003, and by failing to take the actions required in the order.

Lastly, in the Williams matter, on January 21, 2004, the district court ordered Joy to return within ten days of the receipt of the order one-half of the fees held by Joy in trust, or $1,519.17, because the fees had not been earned under Probate Rule 7.2 and as a sanction for Joy's lack of attention to the file. This order was sent to P.O. Box 177 in Mechanicsville, Iowa. The record shows that on January 6, 2004, Joy sent a handwritten letter to the Board of Professional Ethics and Conduct stating that he no longer resided in Colfax, Iowa, and that future correspondence should be sent to P.O. Box 177 in Mechanicsville. On February 2, 2004, Joy signed a receipt for a certified letter sent by the Board to that address. As a result, we conclude that Joy received the order in the Williams case directing him to refund the fee.

Although there is no evidence in the record to show that he converted the funds to his own use, Joy did not comply with the January 21, 2004, order to release the funds from his trust account. Ultimately, the district court entered judgment against Joy in favor of the beneficiaries for this amount on February 13, 2004. Refusing to refund the fee in violation of the court order violates DR 7-106(A) as well as DR 9-102(B)(4) (lawyer shall promptly pay or deliver to client the property in possession of lawyer which client is entitled to receive).

### C. Misrepresentations.

An attorney is prohibited from engaging in conduct involving dishonesty, fraud, misrepresentation, and deceit. In connection with this bedrock principle, we have stated that a "casual, reckless disregard for

the truth" warrants discipline. *Daggett,* 653 N.W.2d at 380. Statements by an attorney which evince lack of respect for the truth violate DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Our ethics rules also prohibit other conduct which reflects adversely on a lawyer's fitness to practice law. DR 1-102(A)(6).

The record in this case demonstrates that Joy engaged in a pattern of misrepresentations designed to conceal his neglect of the files, which, at a minimum, amounts to a reckless disregard for the truth. For example, in the Shulista and Williams matters, Joy represented, in response to delinquency notices, that minimal work needed to be completed on the estates when work, such as the preparation and filing of various tax returns, remained to be done. While an attorney is not subject to discipline because of an honest mistake, the record here shows that Joy engaged in an effort to minimize his lack of attention and neglect of client matters. *Honken,* 688 N.W.2d at 817; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Smith,* 569 N.W.2d 499, 501 (Iowa 1997).

Joy also made false statements to his clients in the Svoboda matter. Joy advised his clients that he had timely filed a request for an extension to file their tax returns when he had not done so. Misinforming a client about the status of tax returns is an ethical violation. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Reedy*, 586 N.W.2d 701, 702 (Iowa 1998).

While these statements might be viewed in isolation as mere mistakes, the totality of facts and circumstances here convinces us that the statements were made to mask Joy's neglect. At a minimum, they demonstrate a reckless disregard for the truth and, as a result, Joy violated DR 1-102(A)(4).

In addition, Joy made statements to the district court on two occasions indicating that he would take prompt action in the future. In the Williams matter, Joy advised a district court judge that he would personally mail a final report to the district court that same day. He did not, however, do so on that day or any other day thereafter. In the Boots matter, Joy advised the district court that he would provide counsel for the fiduciaries with copies of various estate documents for their signatures in a few days. He did not do so. While it is questionable whether statements of future intent are misrepresentations of fact, Joy's demonstrated unreliability violates DR 1-102(A)(5) (prohibiting conduct prejudicial to the administration of justice) and DR 1-102(A)(6) (prohibiting conduct that reflects adversely on fitness to practice law).

### D.    Failure to Turn Over Client Papers.

A lawyer has a responsibility to turn over client papers and property to which the client is entitled prior to withdrawal from employment. DR 2-110(A)(2). On two occasions, clients who had obtained the services of other lawyers requested that Joy turn over client papers. In the Svoboda matter, Joy promised that he would provide the tax files, but did not do so. In the Boots matter, Joy was ordered to turn the file over to counsel for Boots, but again failed to do so. As a lawyer, Joy has a responsibility to provide clients and successor counsel with client papers under the circumstances presented here. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman*, 603 N.W.2d 600, 602 (Iowa 1999). His failure to do so violates DR 2-110(A)(2) and also reflects adversely on his fitness to practice law in violation of DR 1-102(A)(6).

### E.    Lack of Response to Board Inquiries.

At the time of the above matters, failing to timely respond to the Board's inquiries gave rise to an independent ethical violation.

*Grotewold,* 642 N.W.2d at 293. An attorney who fails to timely respond to the Board's inquiries violates DR 1-102(A)(5) and (6).

The record in this case shows that Joy failed to respond to each of the four claims investigated in this matter. The filing of a conclusory answer, moreover, was not sufficient. The work of the Board, the Commission, and this court has been made more difficult by the lack of response. Under the circumstances, the record establishes that Joy repeatedly violated DR 1-102(A)(5) and (6).

**V.      Sanctions.**

In determining the appropriate sanction, this court considers "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the [bar] as a whole, and the respondent's fitness to continue in the practice of law." *Freeman,* 603 N.W.2d at 603. The court considers both aggravating and mitigating circumstances in setting the sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman,* 637 N.W.2d 183, 187 (Iowa 2001).

In cases involving neglect, this court has generally imposed discipline ranging from a public reprimand to a six-month suspension, depending upon relevant facts and circumstances. *Freeman,* 603 N.W.2d at 603. An important factor is the prejudice caused by the neglect. Under the record here, no substantive rights were lost as a result of neglect itself.

Where neglect is compounded by other serious offenses, however, this court has suspended the license of the offending attorney for substantial periods of time. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann,* 712 N.W.2d 89 (Iowa 2006) (two-year suspension for multiple acts of neglect, misrepresentations to court, numerous accounting failures, misuse of client funds, and failure to respond to ethics

investigation); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sotak*, 706 N.W.2d 385 (Iowa 2005) (two-year suspension for violations including neglect, misrepresentations to clients, settlement and dismissal of cases without client consent, and failure to promptly release client funds); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391 (Iowa 2005) (eighteen-month suspension for violations including neglect of probate matters, self-dealing and taking fees without proper accounting, improper tactics in proceedings, lack of proper accounting procedures, and failure to respond to ethics investigation); *Honken*, 688 N.W.2d at 812 (two-year suspension for violations including multiple acts of neglect, misrepresentations to the court, misrepresentations to client, conflicts of interest, and failure to respond to ethics complaint); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rauch*, 650 N.W.2d 574 (Iowa 2002) (one-year suspension for violations including neglect, misrepresentation, and improper ex parte communications); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333 (Iowa 2000) (three-year suspension for violations including neglect, accepting fees without court authorization, misrepresentations, disregarding a court order, habitually disregarding statutes and court rules); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jay*, 606 N.W.2d 1 (Iowa 2000) (one-year suspension for violations including neglect, misrepresentation of status of proceedings, and failure to refund attorneys fees, aggravated by history of two prior disciplinary problems). Here, Joy's neglect is substantially compounded by his refusal to comply with court orders, his misrepresentations to the court and clients, and his lack of cooperation with the Board.

It is possible that there are mitigating circumstances that, while not excusing the disciplinary violations, might have a bearing on severity

of sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel,* 634 N.W.2d 652 (Iowa 2001) (alcoholism); *Grotewold,* 642 N.W.2d at 292-96 (major depression). Joy, however, chose not to participate in the hearing and, as a result, the record is not well developed regarding mitigating factors. While there is insufficient evidence to significantly reduce the length of suspension, protection of the public requires that this court receive assurance that any potential health problem be addressed by Joy prior to any application for readmission.

In light of all the facts and circumstances, we suspend Joy's license indefinitely, with no possibility of reinstatement for eighteen months. This suspension is to run concurrently with his present suspension for failure to comply with the client security and continuing legal education requirements. Upon application for reinstatement, Joy must show that he has not practiced law during the suspension period and that he has complied with all the requirements in Iowa Court Rule 35.21. In any application for reinstatement, Joy must present an evaluation by a licensed health care professional verifying his fitness to practice law. Before obtaining the evaluation, Joy must submit the name of the proposed evaluator and the nature of the proposed evaluation to the Board for approval. Further, Joy must demonstrate in any application for reinstatement that he has satisfied the judgment entered in the Williams estate and that he has reimbursed the Svobodas the penalty amount of $94.10. Finally, the costs of this action are taxed against Joy pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**