# IN THE SUPREME COURT OF IOWA

No. 133 / 06-1320

Filed March 5, 2007

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD**,

      Complainant,

vs.

**JAMES FRANKLIN HALL, JR.**,

      Respondent.

_____

On review of the report of the Grievance Commission.

Grievance Commission reports that Respondent has committed ethical misconduct and recommends a suspension from the practice of law. **LICENSE SUSPENDED**.

Charles L. Harrington and Laura M. Roan, Des Moines, for Complainant.

Donna Ruth Beary, Des Moines, for Respondent.

**CADY, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged James F. Hall, Jr. with numerous violations of the Iowa Code of Professional Responsibility for Lawyers. The Grievance Commission of the Supreme Court of Iowa (Commission) found Hall violated the Code of Professional Responsibility. It recommended Hall be suspended from the practice of law for a minimum period of fifteen months. On our review, we find Hall violated the Code of Professional Responsibility, and we suspend his license to practice law indefinitely, with no possibility of reinstatement for twelve months.

## I.     Background Facts and Proceedings.

James F. Hall, Jr. is an Iowa lawyer. He was admitted to the practice of law in Iowa in 2002. Hall was raised in Des Moines, and enjoyed a variety of success in his life prior to practicing law. Hall was an exceptional multi-sport high school athlete and a one-time Olympic hopeful in track. He served in the United States Navy, and is a veteran of the Gulf War. He was the first member of his family to attend and graduate from college.

Hall began his legal career as a sole practitioner in Des Moines. Within a short period of time, he moved from Des Moines and began practicing law in Waterloo as a sole practitioner. The demands on his time were great, and he began, unknowingly at first, to exhibit signs of what would later be identified as depression and bipolar disorder. He also had little understanding of the intricacies of an office practice, or the need to fully train and supervise staff. He had no real mentor within the profession, and primarily associated with people that provided little professional guidance. There was evidence that some people he associated with used illegal drugs in his home. The confluence of these

circumstances, as well as others, foretold the disaster that would lie ahead. This cataclysm eventually unfolded in an eight-count complaint filed by the Board in 2006, and a hearing before the Commission that set forth the evidence largely supporting the complaint. Hall currently lives in Des Moines and practices with another lawyer in an office sharing arrangement.

Hall's office practice in Waterloo was marked by disorganization and, at times, chaos. On one occasion in 2005, Hall signed the names of two clients to their bankruptcy petitions after he had traveled to the federal courthouse in Cedar Rapids to file the petitions and discovered the signatures were missing. He did not obtain permission from the clients to sign their names, and did not understand he was not permitted to sign the petitions for his clients. *See* 11 U.S.C. § 110(e)(1) (2006) ("A bankruptcy petition preparer shall not execute any document on behalf of a debtor."). Hall then told conflicting accounts of the matter to the bankruptcy judge and later to the Commission.

Hall also neglected client cases on numerous occasions. Between 2003 and 2005, Hall neglected four separate cases after filing notices of appeal with this court. He repeatedly missed filing deadlines and received default notices from the clerk of court. On one occasion, his neglect resulted in the dismissal of the appeal. Hall also neglected a case involving a claim for wrongful discharge he undertook on behalf of a client named Marsha Lewis. After agreeing to handle the case, Hall made little or no effort to advance the client's claim. He also misrepresented the status of the case to the client and later failed to promptly turn over the client file after the client obtained new counsel. Similarly, Hall neglected a case on behalf of a client named Kristen Campbell after agreeing to represent the client on an insurance claim involving the

death of her husband. He failed to return numerous phone calls from the client and did little or no legal work in the case. He also failed to turn over the client file after the client obtained new counsel. The papers in the file had not been returned to the client as of the date of the hearing before the Commission. Hall was unable to locate the file or the papers belonging to the client.

Hall maintained a trust account in his practice, but repeatedly mismanaged the account and failed to comply with trust account requirements. He did not maintain a proper ledger of deposits and withdrawals, and repeatedly used the account to deposit and withdraw personal funds. He also permitted a paralegal in his office to deposit and withdraw funds. In 2004, for example, Hall deposited the proceeds from a personal loan into the trust account, and then periodically used the account to pay a variety of business and personal obligations. Hall also deposited other personal funds into the trust account from time to time. At times, Hall used the trust account more for his personal dealings than for client matters. Nevertheless, there was no evidence he failed to maintain an adequate amount of personal funds in the account when he withdrew funds for personal matters.

Hall handled other financial matters in unorthodox ways. On two occasions, Hall was paid fees or advances from clients that were never deposited in the trust account. The Commission, however, found Hall had earned the fees by the time they were paid by the client. On another occasion in August 2004, Hall received a settlement check from an insurance company on behalf of a client in the amount of $3500. Instead of depositing the check in his trust account, Hall went to the bank with his client to negotiate the check. The fee arrangement apparently entitled the client to $2000. Hall deposited the check into his

office account at the bank and paid his client $2000 in cash. A few days later, Hall transferred $3000 from his trust account into his office account. When Hall's trust account was later audited by the Client Security Commission, Hall falsely told the auditor the $3000 that had been transferred from the trust account represented the settlement proceeds.

Finally, Hall repeatedly failed to respond to Board inquiries in response to the various complaints filed against him.

## II. Board Complaint.

The Board charged Hall with multiple violations of the rules of professional responsibility. Count I involved the bankruptcy petitions and alleged Hall violated six separate provisions of the Code of Professional Responsibility, including DR 1-102(A)(4) (misrepresentation); DR 1-102(A)(5) (conduct prejudicial to the administration of justice); DR 1-102(A)(6) (conduct adversely reflects unfitness to practice); and DR 7-102(A)(5) (false statement of law or fact). Count II involved the neglect in the four appellate cases and alleged Hall violated four code provisions, including DR 6-101(A)(3) (neglect of a client's legal matter). Count III involved other cases of neglect, and alleged Hall violated ten separate code provisions, including DR 6-101(A)(3), DR 1-102(A)(5), and DR 2-110(A)(2) (return client papers). Counts V and VI involved the trust account violations, and alleged Hall violated code provisions including DR 9-102(A) (client funds required to be placed in trust account and a lawyer shall not deposit funds of the lawyer into the trust account); DR 9-103(A) (maintain ledger or record of client funds); DR 9-102(B)(3) (maintain complete records and render an accounting to client); and DR 1-102(A)(4). Count V also alleged misappropriation of client funds in

violation of DR 1-102(A)(4). Count VIII involved the failure to cooperate with the Board in violation of DR 1-102(A)(5) and (6).

Count IV alleged Hall submitted an excessive fee claim in a case. Count VII alleged Hall used a controlled substance.

The Commission found the Board established the violations under Counts I, II, III, V, VI, and VIII. It found the Board failed to establish Counts IV and VII. It also found Hall did not misappropriate client funds as alleged in Count V. It recommended Hall be suspended from the practice of law for fifteen months. As a condition of reinstatement, the Commission recommended Hall undergo a mental health evaluation and disclose the name of a licensed attorney who would be willing to serve as a mentor to him to provide guidance following any reinstatement. It also recommended Hall attempt to locate and return the papers and records belonging to Kristen Campbell.

### III. Scope of Review.

We review attorney disciplinary matters de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard*, 653 N.W.2d 373, 375 (Iowa 2002). We give the findings of the Commission weight, but are not bound by them. *Id.*

### IV. Violations.

We agree with the findings and conclusions made by the Commission in its detailed report. In particular, the evidence showed Hall violated the provisions of the Code of Professional Responsibility as found by the Commission. He engaged in misrepresentation and conduct that adversely reflected on his fitness to practice law by signing his name to the bankruptcy petitions and later telling inconsistent accounts of his misconduct. This conduct violated the Code of Professional Responsibility, including DR 1-102(A)(6) and DR 1-102(A)(4).

He neglected client matters in violation of DR 6-101(A)(3) by his failure to comply with the rules of appellate practice in four separate cases. He also neglected client matters in two other cases, misrepresented the status of the cases to his clients, and failed to promptly return client papers. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman*, 603 N.W.2d 600, 602 (Iowa 1999) (obligation to turn over client papers to successor counsel). He also failed to respond to numerous notices from the Board in violation of the Code of Professional Responsibility. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kelsen*, 670 N.W.2d 161, 167 (Iowa 2003) (failing to respond in a timely manner).

It is clear Hall also maintained his trust account in violation of the requirements of DR 9-102. He used the trust account to deposit personal funds and to pay personal and business expenses. The commingling of his personal funds with his trust account violated DR 9-102(A) of the Code of Professional Responsibility. He also failed to maintain a proper ledger and other records to demonstrate compliance with the trust account requirements in violation of DR 9-103. To compound matters he knowingly misrepresented the nature of at least one trust account transaction to the Client Security Commission auditor in violation of DR 1-102(A)(4). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Matson*, 558 N.W.2d 193, 194 (Iowa 1997).

## V.    Discipline.

In determining the appropriate level of discipline, we focus on "the nature of the alleged violations, the need for deterrence, the protection of the public, maintenance of the reputation of the [Bar] as a whole, and the respondent's fitness to continue" to practice law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Waters*, 646 N.W.2d 111, 113–14 (Iowa 2002). We consider both aggravating and mitigating circumstances. *Id.*

In the end, we impose discipline based on the particular facts of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. McKittrick*, 683 N.W.2d 554, 563 (Iowa 2004).

Our prior cases reveal the discipline we impose for neglect normally ranges from a public reprimand to a six-month suspension. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 655–56 (Iowa 2001). In this case, the neglect was visited on numerous clients, and was frequently compounded by misrepresentations to clients. The neglect also visited harm on clients. Hall further compounded his neglect by failing to turn over client files after termination of the attorney-client relationship.

Hall engaged in other acts of misrepresentation. He improperly signed his client's names on bankruptcy petitions in violation of federal law, and told conflicting stories of the account to minimize his culpability. Likewise, he misrepresented the circumstances of a suspicious transaction involving his trust account to an auditor from the Client Security Commission. Dishonesty, deceit, and misrepresentation by a lawyer are abhorrent concepts to the legal profession, and can give rise to the full spectrum of sanctions, including revocation. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ackerman*, 611 N.W.2d 473, 474 (Iowa 2000); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 603 N.W.2d 574, 576 (Iowa 1999). An honest lawyer is essential to the legal profession. *See Comm. on Prof'l Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 453 (Iowa 1990). Generally, neglect combined with incidents of misrepresentation give rise to a lengthy suspension from the practice of law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth*, 656 N.W.2d 93, 100 (Iowa 2002).

The failure to comply with the trust account requirements is also a serious matter. We have said that the commingling of trust funds with personal or office funds is strictly prohibited. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 560 N.W.2d 592, 594 (Iowa 1997). Moreover, the overall manner in which Hall operated the trust account was outrageously deficient. It reflected his overall approach to the practice of law, and revealed his general unfitness to be a lawyer at this time.

We have recognized the rigors of the practice of law and the difficulties that can be encountered by attorneys. *See McKittrick*, 683 N.W.2d at 563. These difficulties are multiplied exponentially for young lawyers who venture into the practice as sole practitioners. This factor, perhaps more than any other, may help explain the disaster Hall encountered in his practice of law. This also explains the recommendation by the Commission that Hall be required to identify and become associated with a lawyer to serve as a mentor and counselor before resuming his legal practice. Additionally, Hall struggled with burgeoning mental health issues. These matters contributed to his misconduct, and can ultimately serve to mitigate sanctions. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins*, 648 N.W.2d 127, 135 (Iowa 2002).

The scope and type of misconduct engaged in by Hall—profuse client neglect, repeated misrepresentations, trust account failures, failure to return client property, failure to respond to the Board, and general law office mismanagement—has been documented by us in a host of prior disciplinary cases, including our recent case of *Iowa Supreme Court Attorney Disciplinary Board v. Joy*, ___ N.W.2d ___ (Iowa 2007) (filed February 23, 2007) (listing similar cases). These cases reveal we

generally discipline lawyers who engage in this misconduct by suspending them from the practice of law for a period between one and three years. *Id.* Of course, the point where the discipline ultimately falls within the range depends on the particular facts and circumstances as revealed in each case. In the end, this case can be distinguished from the others. Ultimately it seems to reveal less about an unethical lawyer than one who was confused, alone, and unprepared for the voyage he undertook, and quickly found himself well over his head in the dangerous and sometimes treacherous currents of the practice of law. Under all the circumstances, we conclude Hall should be suspended from the practice of law indefinitely, with no possibility of reinstatement for twelve months.

The conditions of reinstatement recommended by the Commission are reasonable, and will be considered upon any application for reinstatement by Hall. Moreover, we support the concept of mentoring for all new lawyers, especially those who have recently graduated from law school and choose to begin their careers as a sole practitioner. The lack of education and guidance on the intricacies of the practice of law is often, as in this case, a recipe for disaster for new lawyers. Consequently, all new lawyers who decide to engage in the practice of law as a sole practitioner would benefit immeasurably from a mentor, just as they would benefit from obtaining continuing legal education on office practices before opening a law office as a sole practitioner. The profession, and the public, would benefit by including such education in continuing legal education programs for new lawyers.

**VI.    Conclusion.**

We suspend Hall's license to practice law in Iowa indefinitely, with no possibility of reinstatement for a period of twelve months from the

date of filing of this opinion. The suspension imposed applies to all facets of the practice of law as provided by Iowa Court Rule 35.12(3), and requires notification to clients as provided in Iowa Court Rule 35.21. The costs of this proceeding are taxed against Hall pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**