# IN THE SUPREME COURT OF IOWA

No. 19–1662

Filed January 24, 2020

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**BEAU A. BERGMANN,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends public reprimand and probation for violations of ethical rules. **ATTORNEY REPRIMANDED.**

Tara van Brederode, Des Moines, and Andrew J. Boettger, Ames, for complainant.

Alfredo Parrish of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann LLP, Des Moines, for respondent.

**MANSFIELD, Justice.**

### I. Introduction.

A relatively inexperienced Iowa attorney had too much on his plate and, as a result, missed court deadlines and appearances. After the Iowa Supreme Court Attorney Disciplinary Board (Board) filed a complaint against the attorney, the parties reached a stipulation of facts, violations, and sanctions. They proposed that the attorney receive a public reprimand followed by twelve months of probation. The Iowa Supreme Court Grievance Commission agreed with the joint recommendation and passed it along to us.

On our review, we conclude that a public reprimand is appropriate for this case of neglect. Several mitigating factors are present, including the attorney's inexperience. But we decline to order probation. In our view, any such change in our disciplinary system should be instituted via rulemaking, with an opportunity for public comment.

### II. Facts and Procedural History.

**A. Our Limited Record.** Our factual record is sparse because the matter was submitted on a stipulation, and the stipulation is rather vague as to what the facts are. Also, no exhibits accompany the stipulation to provide additional background.[1]

One example of a shortfall in the stipulation is the following sentence: "Bergmann neglected the dissolution case by failing to keep B.M.

---

[1]Iowa Court Rule 36.16(2) provides,

> The grievance commission must interpret the stipulation of facts with reference to its subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings, issues involved, and any additional evidence elicited at a limited hearing.

Thus, the rule contemplates that the record will often include more than just the stipulation.

reasonably informed of the status of said case."[2]  This is really a stipulation as to a legal conclusion, not a fact.  It would be helpful to know in what ways Bergmann failed to keep his client informed and for how long the client remained uninformed.

The next sentences of the stipulation recite, "Bergmann received the relevant documents late from the client.  However, Bergmann concedes he should have been more diligent in obtaining the information."  For purposes of our review, it would be helpful to know what the documents were, when they were obtained, and what their importance to the case was.

Next the stipulation states, "Bergmann admits he did not properly follow the Rules of Civil Procedure relative to proper notice of service of process in B.M.'s matter."  What was the deficiency here?  What effects did it have?

The stipulation continues, "Bergmann admits he did not file the affidavits on behalf of B.M. in a timely fashion and should have done so.  However, a mitigating factor is that B.M. produced these affidavits at a late hour."  Again, what affidavits are the parties referring to, when should they have been filed, and when were they in fact filed?

These details matter because not every missed deadline or delay is an ethical violation.[3]  And even when we find an ethical violation, the

---

[2]Although the stipulation does not identify Bergmann's clients, our practice is not to use pseudonyms or initials routinely in our opinions.  We do use pseudonyms or initials when the identity of someone is legally confidential, such as a juvenile, or when the nature of the matter calls for confidentiality, such as an allegation of sexual harassment or domestic violence.  *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sears*, 933 N.W.2d 214, 217 n.1 (Iowa 2019) ("Due to the sensitive nature of the underlying facts, we will use the pseudonym 'Jane Doe' in reference to the victim witness.").

[3]We have previously said,

> Generally, a violation of rule 32:1.3 cannot be found if "the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith."  An attorney does not typically commit neglect by missing a single deadline.  Instead, neglect involves a consistent failure to perform obligations the lawyer has assumed or a "conscious

sanction often turns on the seriousness of the violation and the attendant circumstances. The Board has the burden of proof. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Smith*, 885 N.W.2d 185, 192 (Iowa 2016) (discussing the board's burden of proof in a case heard on stipulation). Therefore, to the extent our factual record falls short, we cannot hold that against the attorney. *See id.*

From the stipulation and the admitted allegations of the complaint, we can glean some relevant facts. Beau Bergmann has been licensed to practice law in Iowa since 2012—a period of seven years. Bergmann resided first in Des Moines (2012 to 2015) and then later in Mount Pleasant (2015 to present). Until 2018, Bergmann attempted to maintain offices in both Des Moines and Mount Pleasant. Since then, Bergmann has maintained an office only in Mount Pleasant and is focused on building a practice in Henry County and the surrounding area. Bergmann has accepted court appointments through the state public defender in seventeen counties. The disciplinary proceeding concerns Bergmann's representation of three different clients, one of which involved a court appointment.

**B. The First Client.** In 2014, Bergmann began representing a client in a dissolution of marriage action that involved children.[4] Bergmann failed to appear for a hearing on temporary matters, even though he acknowledged that the client had delivered to him a copy of the

---

disregard for the responsibilities a lawyer owes to a client," and may arise when an attorney repeatedly fails to meet deadlines.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 265 (Iowa 2012) (citation omitted) (first quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 812 (Iowa 2007); and then quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010)).

[4]The stipulation says this representation began in 2015. We assume that to be a typographical error.

order setting the hearing. Without Bergmann having made an appearance, the judge entered a ruling on temporary matters on September 26. Five days later, on October 1, Bergmann filed a motion for suspension and reconsideration of temporary matters. In that motion, Bergmann told the court, incorrectly, that the "first filing" he had received on the temporary matters hearing was the September 26 ruling. Eventually, the client retained new counsel. On November 14, the new attorney filed a motion for further hearing. The motion included four affidavits that had been notarized by Bergmann on October 1.

The parties have also stipulated that Bergmann "believes" his request for reconsideration was appropriate and timely and "does not feel he was untruthful in connection with this disciplinary matter but accepts responsibility."

**C. The Second Client.** In 2015, Bergmann was appointed to defend an individual who had been charged with perjury. The individual was convicted later that year. Bergmann filed a notice of appeal on December 21. On January 13, 2016, another attorney, Kenneth Weiland, likewise filed a notice of appeal. On January 25, both Bergmann and Weiland were issued notices of default and assessed $150 penalties for failure to file and serve the combined certificate and pay the appeal fee. On February 8, Weiland filed the combined certificate and requested a waiver of the appeal fee. Bergmann took no action. On May 24, both Bergmann and Weiland were issued notices of default and assessed $150 penalties for failure to file and serve the appellant's proof brief and designation of appendix parts. Neither attorney responded to these notices, and the appeal was dismissed for want of prosecution. *See* Iowa R. App. P. 6.1202(1)(*a*). Later, Weiland moved unsuccessfully for reinstatement of the appeal.

According to the parties' stipulation, Bergmann erroneously believed that his court-appointed duties had ended once Weiland filed a notice of appeal as appellate counsel. Bergmann acknowledges he should have followed up with the court and with Weiland to ensure the defaults were cured and the appeal was progressing.

**D. The Third Client.** The third matter involved a custody proceeding that unfolded during 2016. Bergmann's client repeatedly had difficulty reaching Bergmann. Bergmann admits he received calls and failed to timely respond. At an August 15 pretrial conference, Bergmann learned for the first time that his client had reached a settlement in mediation; before then, Bergmann had been unaware of either the mediation or the settlement. In late October, Bergmann's client asked him to withdraw. In November 2016, Bergmann filed a notice of withdrawal at the client's request. The court denied Bergmann permission to withdraw until a new attorney appeared. Bergmann admits there were administrative shortcomings with regard to the records he maintained in the matter.

**E. The Complaint and Subsequent Proceedings.** The Board filed a complaint against Bergmann on November 14, 2018, alleging disciplinary rule violations in the foregoing three matters. Bergmann filed a motion for a more specific statement and an answer. As already noted, the parties subsequently reached a stipulation and submitted the matter to the commission on that basis. *See* Iowa Ct. R. 36.16(1). The commission found violations of Iowa Rule of Professional Responsibility 32:1.3 (requiring the attorney to "act with reasonable diligence"), rule 32:1.4 (requiring the attorney to "reasonably consult with the client"), rule 32:3.2 (requiring the attorney to "make reasonable efforts to expedite litigation"), rule 32:3.4(c) (requiring the attorney not to

"knowingly disobey an obligation under the rules of a tribunal"), and rule 32:8.4(d) (requiring an attorney not to "engage in conduct that is prejudicial to the administration of justice").

**F. Other Considerations.** Bergmann has had many stressors in his life. Some are work-related. Bergmann has practiced primarily in the area of indigent criminal defense. This practice requires considerable travel, much of which has not been compensated in Bergmann's case. Bergmann used to have an associate, but the associate left suddenly, and Bergmann has been unable to hire another.

Bergmann also has sources of stress in his personal life. He and his wife lost a child due to a miscarriage. Bergmann suffers from persistent depressive disorder in the mild range. His wife has suffered from depression as well. Bergmann is currently undergoing personal and marriage counseling.

Bergmann has begun using office management software and has instituted regular staff meetings to improve office procedures and ensure work is done in a timely manner.

Bergmann has been a member of the executive council of the Young Lawyers Division of the Iowa State Bar Association since 2015. He serves as a volunteer judge at mock trial competitions. He has worked on pro bono cases.

Bergmann has responded to all correspondence from the Board. He volunteered for a psychiatric evaluation after these matters arose and has been receiving mentoring from his brother, also an Iowa attorney.

### III. Standard of Review.

"We review attorney disciplinary matters de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 933 N.W.2d 206, 213 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lynch*, 901 N.W.2d 501,

506 (Iowa 2017)); *see* Iowa Ct. R. 36.21(1). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Earley*, 933 N.W.2d at 213 (quoting *Lynch*, 901 N.W.2d at 506).

"When the parties enter into a stipulation, . . . they are bound by the stipulated facts, which we interpret with reference to their subject matter and in light of the surrounding circumstances and the whole record." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 922 N.W.2d 601, 604 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 777 (Iowa 2016)). "However, '[w]e are not bound by stipulations as to ethical violations or the appropriate sanctions.' " *Id.* (alteration in original) (quoting *Johnson*, 884 N.W.2d at 777). "We respectfully consider the commission's recommendations as to sanction . . . ." *Earley*, 933 N.W.2d at 213.

## IV. Rule Violations.

Notwithstanding our misgivings about the stipulated record in this case, we agree with the parties and the commission that Bergmann violated several rules of professional conduct. In the future, we remind parties to comply with rule 36:16(1)(*a*) when entering into stipulations in attorney disciplinary proceedings. That rule provides,

> A stipulation submitted pursuant to this rule must include:
>
> *a.* For each rule violation stipulated, a separate paragraph stating supporting facts sufficient to allow the grievance commission and the supreme court to find a factual basis for concluding the violation occurred.

Had the parties gone through the exercise of "stating supporting facts," it is likely that the facts necessary to sustain each asserted rule violation

would have been much more developed. Still, the record allows us to draw the following conclusions.

**A. Rule 32:1.3—Diligence.** Rule 32:1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. "An attorney violates this rule when the attorney 'fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 933 N.W.2d 190, 198–99 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 537 (Iowa 2013)).

Although a single missed deadline does not ordinarily violate rule 32:1.3, there is enough for us to conclude that Bergmann had a pattern of letting things slide in the first and third matters. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 206 (Iowa 2014) ("A violation of [rule 32:1.3] arises not from inadvertent acts or omissions or from missing a single deadline, but from consistently failing to perform functions required of an attorney or from repeatedly missing deadlines." (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 64 (Iowa 2014))); *see also* Iowa R. Prof'l Conduct 32:1.3. Bergmann missed an important hearing on temporary matters in a dissolution case that involved children. Bergmann did not attend a mediation in a child custody case. He therefore violated rule 32:1.3.

**B. Rule 32:1.4—Communication.** Rule 32:1.4 requires an attorney to "keep the client reasonably informed about the status of the matter" and to "promptly comply with reasonable requests for information." Iowa R. Prof'l Conduct 32:1.4(a)(3), (4). "We have concluded attorneys violate both subsections (a)(3) and (a)(4) [of rule 32:1.4] by failing to keep their clients informed about the status of their case and neglecting

to respond to client inquiries." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Capotosto*, 927 N.W.2d 585, 588 (Iowa 2019). In the third matter, the record is minimally adequate for us to conclude that Bergmann violated this rule. He admits that his client had trouble reaching him, that he received phone calls from the client, and that he failed to respond to the phone calls. *See Noel*, 933 N.W.2d at 199–200. This conduct establishes a violation of rule 32:1.4(a).

**C. Rule 32:3.2—Expediting Litigation.** Rule 32:3.2 requires an attorney to "make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. Prof'l Conduct 32:3.2. Failure to meet appellate deadlines and the triggering of default notices can violate rule 32:3.2. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 637 (Iowa 2015). That occurred here with respect to the second matter. Although Bergmann had not been appointed to handle the appeal, he should have known that he remained responsible for the case until there was an order of withdrawal in place. *See* Iowa R. Crim. P. 2.29(6) ("Trial counsel shall continue as defendant's appointed appellate counsel unless the trial court or supreme court orders otherwise."). Bergmann violated rule 32:3.2.

**D. Rule 32:3.4(c)—Knowingly Disobeying a Court Order.** Rule 32:3.4(c) makes it a violation to "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Iowa R. Prof'l Conduct 32:3.4(c). We have found violations of this rule in the past when an attorney fails to comply with a court order to provide discovery responses. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 362 (Iowa 2015). However, the Board has not identified a court order that it claims Bergmann knowingly failed to follow. We are

unable to conclude by a convincing preponderance of the evidence that Bergmann knowingly disobeyed a court order in any of the three matters at issue.

**E.  Rule 32:8.4(d)—Conduct Prejudicial to the Administration of Justice.**  Rule 32:8.4(d) prohibits "conduct that is prejudicial to the administration of justice.  "We have consistently held an attorney's misconduct causing prolonged or additional court proceedings violates this rule."  *Capotosto*, 927 N.W.2d at 589.  Here Bergmann's conduct necessitated additional court action and proceedings in the first and second matters.  We find that he violated rule 32:8.4(d).

**V.  Discipline.**

"There is no uniform sanction for a particular ethical violation." *Earley*, 933 N.W.2d at 213 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bauermeister*, 927 N.W.2d 170, 174 (Iowa 2019)).  Yet, "[w]e seek to 'achieve consistency with prior cases when determining the proper sanction.'"  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crotty*, 891 N.W.2d 455, 466 (Iowa 2017) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010)).

**A.  A Public Reprimand Is the Appropriate Sanction Here.**  The case before us is essentially one of neglect.  Typically, the sanction in a neglect case ranges from a public reprimand to a six-month suspension. *See Noel*, 933 N.W.2d at 205 (discussing the range of sanctions); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kingery*, 871 N.W.2d 109, 123 (Iowa 2015) (same); *Hedgecoth*, 862 N.W.2d at 365 (same).

Several considerations drive us toward the low end of that range, consistent with the parties' joint recommendation.  Although three separate client matters are involved, this appears to be purely a neglect case.  It is not neglect compounded with other misconduct.  Also,

numerous mitigating factors are present. These include Bergmann's inexperience, his personal health issues, his acceptance of responsibility, his cooperation with the Board, his public service, and his willingness to take proactive measures to correct the problems that led to his disciplinary rule violations. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Jacobsma*, 920 N.W.2d 813, 821 (Iowa 2018) (finding that cooperation with the board and community service can be mitigating factors); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 155–56 (Iowa 2018) (characterizing inexperience, depression, acceptance of responsibility, and efforts to correct the problems that led to the disciplinary rule violations as mitigating factors).

In addition, we have not been directed to any aggravating factors. The Board alleges in its complaint—and Bergmann admits—that he has received three prior private admonitions. Although a private admonition is not discipline, we can consider it an aggravating factor because it puts the attorney on notice of his or her ethical requirements. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 528 (Iowa 2017) (treating a private admonition for failing to keep a client reasonably informed to be an aggravating factor in a neglect case). But here, neither the stipulation nor the rest of the record discloses what the private admonitions were for. Therefore, we do not know what notice they conveyed to Bergmann or what relevance they bear to the present case.

In sum, we believe this case falls in line with other precedents where we have issued a public reprimand. *See Weiland*, 862 N.W.2d at 642–43 (imposing a public reprimand for neglect allowing an appeal to be dismissed despite some aggravating factors); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 663 (Iowa 2007) (holding that a public reprimand was appropriate where an attorney neglected two

client matters and failed to respond to notices from the board); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Parker*, 558 N.W.2d 183, 184, 186 (Iowa 1997) (concluding a public reprimand was an appropriate sanction for failure to close two estates for many years). We find that a public reprimand is the appropriate discipline for Bergmann's rules violations.

**B. Probation Should Await Formal Rulemaking.** The parties and the commission also recommend that we put Bergmann on probation for one year. As conditions of probation, Bergmann would continue to mentor with his brother; keep using a case management system in his office; take additional continuing legal education hours beyond the requirement (including six hours of ethics); implement a proactive, management-based regulation assessment and any recommended strategies; and certify continued counseling and treatment.

In recent years, we have generally declined to impose terms and conditions in our attorney disciplinary rulings that would require ongoing supervision. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Waterman*, 890 N.W.2d 327, 333 (Iowa 2017) (declining to require that an attorney remain in therapy "in part because we do not have a mechanism for supervising . . . performance"); *Hedgecoth*, 862 N.W.2d at 366–67 (gathering cases on this issue).

Nonetheless, in its statement regarding sanction in this case, the Board advises us that it is prepared to monitor all of the conditions it proposes. The Board also notes that over half of other jurisdictions imposed probation as a component of attorney discipline in 2017, the last year for which data are available. Finally, the Board observes rule 36.19 authorizes

> additional or alternative sanctions such as restitution, costs, practice limitations, appointment of a trustee or receiver, passage of a bar examination or the Multistate Professional Responsibility Examination, attendance at continuing legal education courses, or other measures consistent with the purposes of attorney discipline.

Iowa Ct. R. 36.19. In the Board's view, this gives us leeway to establish probationary terms and conditions.

Still, we believe that any system of probation for attorneys should be adopted through a formal rule amendment rather than launched in this case. We reach this conclusion for several reasons. First, probation typically comes with consequences for *failure to comply* with the terms of probation. But in this case, it is unclear what would happen if Bergmann did not meet the terms of his probation. He has already received his reprimand. Second, in the realm of attorney discipline, it is important for attorneys to know in advance what sanctions are potentially available for misconduct. That way, all affected attorneys have notice and stand on equal footing. This is the same reasoning that has led us at times to issue a warning before we ramp up the sanction in a particular area of attorney misconduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nine*, 920 N.W.2d 825, 830 (Iowa 2018) ("In the future, we may need to implement harsher sanctions to deter attorneys from engaging in sexual relationships with clients."). Third, to the extent possible, there should be criteria for when probation is and is not available and what effect it has on the sanction. This helps assure that discipline is evenhanded across the board. Lastly, probation would be a significant change in our disciplinary system, and we believe that the bar and members of the public should have the chance to weigh in before we make such a change. A rulemaking proceeding would give interested parties in Iowa the opportunity for input.

We are aware that several neighboring jurisdictions—Illinois, Minnesota, Missouri, Nebraska, and South Dakota—utilize probation in attorney disciplinary proceedings.[5] *See* Ill. Sup. Ct. R. 772; Minn. R. Law. Prof'l Responsibility 15(a)(4); Mo. Sup. Ct. R. 5.225(a)(2); Neb. Sup. Ct. R. § 3-304; S.D. Codified Laws § 16-19-22 (Westlaw current through 2019 Sess. Laws & Sup. Ct. R. 19-18). All of these jurisdictions have adopted rules governing probation. *See* Ill. Sup. Ct. R. 772 ("The court may order that an attorney be placed on probation if the attorney has demonstrated that he: (1) can perform legal services and the continued practice of law will not cause the courts or profession to fall into disrepute; (2) is unlikely to harm the public during the period of rehabilitation and the necessary conditions of probation can be adequately supervised; (3) has a disability which is temporary or minor and does not require treatment and transfer to disability inactive status; and (4) is not guilty of acts warranting disbarment."); Minn. R. Law. Prof'l Responsibility 15(a)(4) ("Upon conclusion of the proceedings, this Court may . . . [p]lace the lawyer on a probationary status for a stated period, or until further order of this Court, with such conditions as this Court may specify and to be supervised by the Director . . . ."); Mo. Sup. Ct. R. 5.225(a)(2) ("A lawyer is eligible for probation if the lawyer: (A) [i]s unlikely to harm the public during the period of probation and can be adequately supervised; (B) [i]s able to perform legal services and is able to practice law without causing the courts or profession to fall into disrepute; and (C) [h]as not committed acts warranting disbarment."); Neb. Sup. Ct. R. § 3-304 ("Misconduct shall be grounds for . . . [p]robation by the Court in lieu of or subsequent to

---

[5]Wisconsin does not impose probation for violations of ethical rules. *See In re Disciplinary Proceedings Against Stoltman*, 915 N.W.2d 176, 180 (Wis. 2018) (indicating that probation is "a form of discipline that this court does not impose").

suspension, on such terms as the Court may designate . . . ."); S.D. Codified Laws § 16-19-35 ("Discipline for misconduct may be imposed as . . . [p]lacement on a probationary status by the Supreme Court for such period and with such conditions as the Supreme Court may specify . . . .").

In most of these jurisdictions, a rule sets forth procedures for revoking probation and specified consequences if the attorney violates the terms of probation. *See, e.g.*, Ill. Sup. Ct. R. 772(c) ("Where appropriate, the Administrator shall report to the court the probationer's failure to comply with the conditions of probation and may request that the court modify the conditions, extend the probation, or issue a rule to show cause why the probation should not be revoked and the stay of suspension vacated."); Minn. R. Law. Prof'l Responsibility 12(a) ("When a lawyer is subject to a probation ordered by this Court and the Director concludes that the lawyer has breached the conditions of the probation or committed additional serious misconduct, the Director may file with this Court a petition for revocation of probation and further disciplinary action with proof of service."); Mo. Sup. Ct. R. 5.225(f)(2) ("If the chief disciplinary counsel receives information during the period of probation that any condition may have been violated, the chief disciplinary counsel may file a motion in this Court specifying the alleged violation and seeking an order requiring the lawyer to show cause why the probation should not be revoked and further discipline imposed. Further discipline may include additional probation, suspension, or disbarment."); *State ex rel. Counsel for Discipline of the Neb. Supreme Ct. v. Pierson*, 798 N.W.2d 580, 585 (Neb. 2011) ("If respondent commits further violations of the Nebraska Rules of Professional Conduct, he shall be subject to revocation of his probation and the imposition of other discipline as outlined in disciplinary rule § 3-304").

We find these examples from our neighbors instructive. While we cannot forecast how probation would look in the Iowa attorney disciplinary system, we believe rulemaking with an opportunity for public comment is the appropriate mechanism for adopting any system of probation in our state.

For all these reasons, we respectfully decline to order probation in this case but remain willing to consider proposed rule amendments from the Board or others.

## VI. Disposition.

We impose a public reprimand on Bergmann. We tax the costs of this action to Bergmann pursuant to Iowa Court Rule 36.24(1).[6]

**ATTORNEY REPRIMANDED.**

---

[6]We have received a submission indicating that Bergmann has already paid these costs.